STROMBERG–CARLSON
CORPORATION,
Plaintiff,

v.

BANK MELLI IRAN, Defendant.

79 Civ. 1167.

United States District Court,
S. D. of New York.

March 23, 1979.

Donovan, Leisure, Newton & Irvine, New York City, for plaintiff; Louis C. Lustenberger, Jr., Howard R. Reiss, New York City, of counsel.

Joseph P. Halligan, New York City, for defendant.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This is a diversity action by Stromberg-Carlson Corporation ("Stromberg-Carlson"), a Delaware corporation engaging in the manufacture and sale of telecommunications equipment, against Bank Melli Iran ("Melli"), an Iranian banking corporation with an agency office in New York regis-

tered with the State Superintendent of Banks. Stromberg-Carlson seeks to enjoin Melli from making payment on two bank guarantees in favor of the "Imperial Government of Iran" without first notifying plaintiff in writing of receipt of a demand for payment and giving plaintiff ten days in which to (1) provide evidence as to lack of authenticity or fraudulent nature of the demand, or (2) take such other action as plaintiff deems appropriate. The identical request for relief was recently made before Judge Ward on behalf of another corporation against the same defendant and involving similar guarantees.[1] This Court concurs in his conclusion that the limited relief sought, in light of the political turmoil in Iran, fully warrants the grant of an injunction.

On or about October 6, 1976, plaintiff entered into an agreement ("the contract") with the Imperial Government of Iran, which at that time was headed by His Imperial Majesty Mohammed Reza Shah Pahlavi Aryamehr ("Shah of Iran"), pursuant to which plaintiff agreed to engineer, manufacture, ship, install and maintain in Iran certain telecommunications equipment for which it would receive in excess of $5,500,-000 from the Imperial Government. Of this amount $1,390,230 was paid by the Imperial Government to plaintiff as an advance payment.

As a condition of the contract and to secure the advance payment, Stromberg-Carlson was required to obtain two bank guarantees in favor of the Imperial Government. These guarantees, which were issued by defendant Melli,[2] are in the respective amounts of $556,091, guaranteeing performance of the contract, and $1,390,230, guaranteeing repayment of the advance payment in the event of a failure to perform the contract. The two guarantees are now outstanding and are payable by Melli on demand by the Imperial Government without notice to plaintiff.

---

1. *Harris International Telecommunications, Inc. v. Bank Melli Iran,* No. 79–802 (S.D.N.Y., Feb. 22, 1979).

2. Bank Melli's shares are owned by the Imperial Iranian Government and Melli's charter requires that members of its governing body sign an oath of loyalty to "our Sovereign, His Imperial Majesty the Shahanshah of Iran."

To obtain the bank guarantees, plaintiff caused irrevocable letters of credit to be issued by Continental Illinois Bank & Trust Co. of Chicago for the benefit of Melli in amounts corresponding to the guarantees. The letters of credit are payable upon Melli's declaration that it has been called upon to effect payment to the Imperial Government, again without notice to plaintiff.

By early February 1979, Stromberg-Carlson had engineered, manufactured and shipped all of the equipment required under the contract and had installed and maintained a substantial portion thereof. Recent events in Iran, however, both before and after the return of the Ayatollah Ruhollah Khomeini, have interrupted transportation and communication systems and disrupted governmental, business and banking functions in Iran. The "present period is one of crisis and uncertainty."[3] According to plaintiff, this state of affairs poses a substantial threat that individuals within Iran, neither duly authorized by the Imperial Government nor in accord with its policies at the time the contract, guarantees and letters of credit were entered into, may issue an unauthorized demand for payment under the bank guarantees for reasons entirely unrelated to performance by Stromberg-Carlson of its duties under the contract. Plaintiff has no practical means of determining the authenticity of, or absence of fraud in, any demand for payment which might be made under the Melli guarantees, nor can any reliable information be obtained as to whether such demands have been or are about to be made.

In light of the foregoing, plaintiff has established its entitlement to a preliminary injunction under the standard prevailing in this Circuit.[4] Under the present circumstances in Iran, there is a serious risk that a fraudulent or nonauthentic demand could be issued on the Melli guarantees.[5] It is clear that the "Imperial Government" with which plaintiff negotiated its contract and in favor of which the bank guarantees were issued has ceased to function. Moreover, the views of the current government with respect to the contract are completely unknown and may well differ, in fact conflict, with those of the former government.

Plaintiff does not seek to alter the terms of the underlying contract nor does it now request an injunction against eventual payment. Although the modest relief requested would require reading a notice requirement into the provisions of the bank guarantee, "the fluid and precarious circumstances now prevailing in Iran justify deviation from what would otherwise be a strong reluctance" to do so.[6]

In the absence of an injunction, plaintiff, in the event of a fraudulent demand, would be called upon to pay close to $2 million

**3.** *Harris International Telecommunications, Inc. v. Bank Melli Iran*, No. 79–802 (S.D.N.Y., Feb. 22, 1979). This Court may judicially notice the continuing political uncertainty in Iran. *United States ex rel. Fong Foo v. Shaughnessy*, 234 F.2d 715, 718 (2d Cir. 1955); *United States ex rel. Mercer v. Esperdy*, 234 F.Supp. 611, 616–17 (S.D.N.Y.1964).

**4.** *See Sonesta International Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973); *Jacobson & Co. v. Armstrong Cork Co.*, 416 F.Supp. 564 (S.D.N.Y.1976), *aff'd*, 548 F.2d 438 (2d Cir. 1977).

**5.** Under the Uniform Commercial Code § 5–114(a)(2), a court may enjoin a bank from honoring the demand for payment when the bank has been *notified by its customer* that a required document is forged or fraudulent or that there is fraud in the transaction. The "fraud" exception to the traditional reluctance of courts to interfere with commercial letters of credit and guarantees has been liberally construed in the decisional law both prior and subsequent to the adoption of the Code. *See, e. g., Dynamics Corp. v. Citizens & Southern National Bank*, 356 F.Supp. 991 (N.D.Ga.1973); *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976); *Sztejn v. J. Henry Schroder Banking Corp.*, 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct. 1941); *Nadler v. Mei Loong Corp.*, 177 Misc. 263, 30 N.Y.S.2d 323 (Sup.Ct.1941). The provisions of the Uniform Customs and Practice for Documentary Credits promulgated by the International Chamber of Commerce are not to the contrary. *United Banking Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d at 258 n.2, 392 N.Y.S.2d at 269 n.2, 360 N.E.2d at 947 n.2.

**6.** *Harris International Telecommunications, Inc. v. Bank Melli Iran*, No. 79–802 (S.D.N.Y., Feb. 22, 1979).

under the guarantees without notice and an opportunity to call the fraud to the attention of the bank. Plaintiff's sole remedy would be to institute an action in the courts of Iran, which in light of the present situation would make any relief questionable. Finally, defendant has not alleged that it would be prejudiced in any way if a ten-day notice requirement is imposed.

In sum, plaintiff has raised serious questions going to the merits of the litigation and the balance of hardships tips decidedly in its favor. The requested injunction is therefore granted.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.