**HOTEL & RESTAURANT EMPLOYEES UNION, LOCAL 25, Plaintiff,**

**v.**

**William French SMITH, et al., Defendants.**

**Civ. A. No. 82–2203.**

United States District Court, District of Columbia.

April 28, 1983.

Richard S. Bromberg, of Robert A. Ades & Associates, and Richard Stern—Boswell, of the Immigration Law Clinic, George Washington University, Washington, D.C., for plaintiff.

Lauri Steven Filppu, Allen W. Hausman, Eugene M. Thirolf, of the U.S. Dept. of Justice, Victor Rostow, of the Office of Gen. Counsel, I.N.S., and Andre Surena, of the Office of Legal Advisor, U.S. Dept. of State, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are defendants' motion to dismiss, plaintiff's opposition thereto, de-

fendants' reply memorandum, and the entire record herein. In this case, plaintiff seeks to challenge the State Department's practice of routinely recommending denial of asylum claims filed by Salvadoran nationals and the failure of the Attorney General and the Immigration and Naturalization Service (INS) to grant such nationals extended voluntary departure. Defendants have moved to dismiss on the grounds that (1) plaintiff lacks standing to maintain this action, (2) the grant or denial of extended voluntary departure is a nonjusticiable political question, and (3) the complaint fails to state a claim upon which relief can be granted. After careful consideration, the Court has decided to deny defendants' motion and to order that the case proceed to trial or to motions for summary judgment.

## I.

### PLAINTIFF HAS STANDING TO MAINTAIN THIS ACTION

█ Defendants assert that plaintiff, a labor union, lacks standing to maintain this action on behalf of its Salvadoran members because the conduct in issue does not adversely affect plaintiff itself nor its members' associational ties. In support of this position, defendants cite the cases of *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

However, plaintiff here *has* alleged injury both to itself and to its members' associational ties. Plaintiff alleges that defendants' actions injure it directly by hampering its ability to organize and retain Salvadoran members as well as its efforts to protect the rights of its existing Salvadoran members to be secure in their jobs. Plaintiff also alleges that defendants' actions affect its members' associational ties by causing their severance. These allegations are plainly sufficient to support standing by plaintiff here.

█ Defendants seek to controvert plaintiffs allegations of standing by challenging the interests plaintiff has asserted.

Defendants contend that plaintiff's Salvadoran members "have no right even to remain in the United States, let alone have a right to a job." As plaintiffs point out, however, this argument *assumes* the major issue in this suit—it assumes that plaintiff's Salvadoran members should not be allowed to remain in the country. Moreover, even if some of plaintiff's Salvadoran members are in the country without defendants' authorization, that fact does not in any way diminish plaintiff's obligation to these members. It is well-settled that alien workers, regardless of their immigration status, fall under the definition of "employees" under the National Labor Relations Act. *See NLRB v. Sure-Tan, Inc.,* 583 F.2d 355 (7th Cir.1978). The NLRA also specifically precludes unions from discriminating against any one group of employees. *Bell & Howell Co. v. NLRB,* 598 F.2d 136 (D.C. Cir.1978), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2885, 61 L.Ed.2d 312 (1979). Thus, plaintiff is indeed legally bound to provide protection to its alien members, as it seeks to do here.

Any doubt about the appropriateness of plaintiff's standing here can be readily dispelled by reference to the Supreme Court's 1973 decision in *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). In *SCRAP,* the Supreme Court upheld the standing of a public interest organization to challenge the ICC's failure to suspend a surcharge on certain railroad freight rates. Plaintiff alleged that its members would be harmed because the failure to suspend would result in increased freight rates, which in turn would cause increased use of nonrecyclable commodities, which in turn would necessitate the use of more natural resources to produce such goods, some of which resources might be taken from the Washington metropolitan area, resulting in more refuse in the national parks in the Washington area, in which plaintiff's members regularly camped and "breathe[d] the air." *Id.* at 688, 93 S.Ct. at 2416. *See also Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 1927 n. 25, 48

L.Ed.2d 450 (1976) (explaining the appropriateness of *SCRAP* to a motion for dismissal). If the Supreme Court is willing to allow standing for such an indirect injury, surely standing must be allowed here, where plaintiff has alleged a direct injury to itself as well as to its members' associational ties. *See Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

## II.

### THE GRANT OR DENIAL OF EXTENDED VOLUNTARY DEPARTURE IS NOT A POLITICAL QUESTION

■ Defendants contend next that what is in issue here is the decision whether to grant or deny extended voluntary departure and that that decision is a political question not subject to judicial review. In support of their position, defendants rely on *Baker v. Carr,* 369 U.s. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and the concurring opinion of Justice Powell in *Goldwater v. Carter,* 444 U.S. 996, 998, 100 S.Ct. 533, 534, 62 L.Ed.2d 428 (1980), which set forth three inquiries in determining whether a political question is presented: (1) Does the issue presented involve the resolution of questions committed by the text of the Constitution to a coordinate branch of government? (2) Does resolution of the question turn on standards that defy judicial application or go beyond judicial resources? (3) Do prudential considerations, such as a need for the government to speak with a single voice, weigh against judicial intervention? Defendant contends that, under these three tests this case presents a nonjusticiable political question.

■ Even using defendants' tests, however, the Court finds that the grant or denial of extended voluntary departure is *not* a nonjusticiable political question.[1] As defendants admit, the control of immigration is *not* directly committed by the text of the Constitution to a coordinate federal branch. It is true that the political branches have been allowed broad leeway to regulate the flow of immigrants, but the Supreme Court has expressly left room for a "narrow standard of [judicial] review of decisions made by the Congress or the President in the area of immigration and naturalization." *Mathews v. Diaz,* 426 U.S. 67, 82, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976); *see also Harisiades v. Shaughnessy,* 342 U.S. 580, 584–90, 72 S.Ct. 512, 516–19, 96 L.Ed. 586 (1952). Such review has long been exercised, as for instance in cases alleging a due process violation in immigration decisions, *see, e.g., Japanese Immigrant Case,* 189 U.S. 86, 3 S.Ct. 611, 47 L.Ed. 721 (1903); *Bilokumsky v. Tod,* 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221 (1923), and more recently in challenges to the denial of political asylum, *see e.g., Haitian Refugee Center v. Civiletti,* 503 F.Supp. 442 (S.D.Fla.1980), *aff'd,* 676 F.2d 1023 (5th Cir.1982).

Second, the Court does not lack a standard or the resources to decide the issues presented in this case. As plaintiff points out, defendants themselves have in the past articulated a cognizable standard for the grant of extended voluntary departure to a group of aliens—"wide-spread fighting, destruction and breakdown of public services and order" in the aliens' country of origin. 128 Cong.Rec. 5832 (daily ed. Feb. 11, 1982); *see also* 1A Gordon & Rosenfield, *Immigration Law and Procedure,* 5–48 (1982). At least one court has made findings as to the serious conditions that exist in El Salvador. *Orantes-Hernandez v. Smith,* 541 F.Supp. 351, 359 (C.D.Cal.1982).[2] As to judicially-manageable resources, it is clear that courts

---

1. It should also be noted that the precise relief that plaintiff seeks is a declaration that the defendants' practices with respect to plaintiff's members are not in accord with applicable provisions of the Constitution, treaties, statutes, or regulations. Even on the surface, this appears to be precisely the sort of inquiry which courts are competent to consider.

2. Moreover, there plainly are judicially cognizable standards for determining whether defendants have violated Constitutional, statutory, or administrative provisions as plaintiff has alleged here.

have the power to take judicial notice of grave conditions in countries where pertinent reports disclose similar accounts. *See United States ex rel. Fong Foo v. Shaughnessy,* 234 F.2d 715 (2d Cir.1955); *United States ex rel. Mercer v. Esperdy,* 234 F.Supp. 611, 616 (S.D.N.Y.1964).

Third, prudential considerations do not prohibit judicial *intervention* in this case. Defendants contend that the United States' credibility in the international community will be damaged if Executive decisions that implicate immigration policies and foreign relations are subject to reversal by the judiciary. As plaintiff points out, however, it is not at all clear that United States' credibility abroad will not be *enhanced* rather than diminished by reversal of the Executive's decisions in this case, since there has been criticism of American treatment of Salvadoran refugees. Regardless of that, though, defendants have not alleged that this case specifically presents a situation in which it is essential that the United States speak with one voice, as for instance, was the situation presented by the Iranian hostage crisis, *see Yassini v. Crosland,* 618 F.2d 1356 (9th Cir.1980). Defendants have merely argued that decisions that touch on immigration or foreign affairs *generally* should not be judicially reviewed. However, as the Supreme Court stated in *Baker v. Carr,* 369 U.S. 186, 212, 82 S.Ct. 691, 707, 7 L.Ed.2d 663 (1962), "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."

### III.

### PLAINTIFF HAS STATED A CLAIM UPON WHICH RELIEF MAY BE GRANTED

■ In its complaint, plaintiff claims two causes of action entitling it to relief. In the first cause of action, plaintiff alleges that the State Department routinely recommends against granting asylum to Salvadorans, without regard to the merits of individual asylum claims, by issuing form letters to the INS. Plaintiff claims that this violates the Fifth Amendment to the Constitution, the United Nations Convention and Protocol on the Status of Refugees, 8 U.S.C. § 1158, and Department of State Notice 351.

Defendants allege that this cause of action does not state a claim upon which relief can be granted because: (1) the State Department *does* consider individual asylum claims on the merits, (2) the State Department's recommendations are not conclusive of the decision of the Attorney General with regard to the immigration status of Salvadorans, and (3) plaintiff has not even attempted to exhaust the administrative remedies available from the Attorney General. As to the first of these contentions— that the State Department does consider individual asylum claims on the merits—defendants themselves concede that the allegations in plaintiff's complaint must be taken as true for the purposes of a motion to dismiss. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); 2A J. Moore, Federal Practice ¶ 12.08, at 2267 (1982). The same principle applies to defendants second contention—that the State Department's recommendations are not conclusive of the decision of the Attorney General. While it may be true that the State Department's recommendations are not supposed to be conclusive of INS asylum definitions under applicable regulations, plaintiff asserts that in practice they *are* conclusive. This is a factual allegation not susceptible of decision on a motion to dismiss. If Plaintiff's allegations are correct, its members may indeed have suffered a deprivation of due process or numerous other violations of law.

■ With respect to defendant's third contention—that plaintiff's members have failed to exhaust available administrative remedies—this case appears to fall within a well-recognized exception to the exhaustion requirement. It is well-established that a plaintiff need not exhaust its administrative remedies if it would be futile to do so. *See, e.g., Weinberger v. Wiesenfeld,* 420 U.S. 636, 641 n. 8, 95 S.Ct. 1225, 1230 n. 8, 43 L.Ed.2d 514 (1975); *Finnerty v. Cowen,* 508 F.2d 979, 982 (2d Cir.1974); 4 K. Davis, Administrative Law Treatise § 26.11 (1983). Here, plaintiff alleges that the State Department systematically and arbitrarily recommends against Salvadoran asylum

claims, and that these recommendations result in denials of such claims by the INS. If plaintiff's allegations are correct, it would indeed be futile for its members to pursue their administrative remedies. Moreover, it has been held that the exhaustion requirement does not apply to challenges relating to immigration procedures employed *prior* to the commencement of deportation proceedings, and that these challenges can and must be brought in the District Court. *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1033 (5th Cir.1982); *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D.Cal.1982).

Accordingly, the Court finds that plaintiff's first cause of action does state a claim upon which relief may be granted.

The same is true with respect to plaintiff's second cause of action alleging that the denial by the INS of extended voluntary departure to Salvadorans is arbitrary and capricious, violative of the Fifth Amendment, and contrary to the rule-making procedures of 5 U.S.C. § 553. In their motion to dismiss, defendants argue that they have abridged no constitutional rights because there is no "right", statutory or otherwise, to extended voluntary departure. They further argue that the rule-making requirements of 5 U.S.C. § 553 are inapplicable here because defendants have taken no "affirmative action" to which that provision would apply and, in any event, because their conduct falls within the exceptions to rule-making for foreign affairs functions, 5 U.S.C. § 553(a)(1), and for general statements of policy, 5 U.S.C. § 553(b)(A).

■ Contrary to defendant's assertions, however, there appears to be a disputed question of fact as to whether defendants have taken any affirmative action to which the rule-making requirements would apply. Plaintiff has pointed to an internal INS memorandum which specifically advises INS Outreach Offices against granting extended voluntary departure to Salvadorans and also to the repeated denials of Salvadoran requests for asylum. Although defendants dispute these showings, it is clear, as already noted, that plaintiff's allegations must be treated as true for purposes of a

motion to dismiss. Such a motion is not the proper basis upon which to decide factual questions.

Similarly, the exceptions to rule-making which defendants have invoked are insufficient to negate the plaintiff's cause of action. The "foreign affairs" exception to rule-making, 5 U.S.C. § 553(a)(1), is not clearly applicable to this case. As the Ninth Circuit stated in *Yassini v. Crosland*, 618 F.2d 1356, 1360 n. 4 (9th Cir.1980), the "foreign affairs exception would become distended if applied to INS actions generally, even though immigration matters typically implicate foreign affairs." Invocation of the exception for "general statements of policy" also does not, *ipso facto*, negate the sufficiency of plaintiff's allegations. There is a split of authority, none of which is binding on this Court, as to whether that exception applies to decisions about extended voluntary departure. *Compare United States ex rel. Parco v. Morris*, 426 F.Supp. 976 (E.D.Pa.1977) (cited by plaintiff) *with Noel v. Chapman*, 508 F.2d 1023 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975) (cited by defendants). Thus, plaintiff's allegations under 5 U.S.C. § 553 are not clearly insufficient to state a claim upon which relief can be granted.

■ Furthermore, plaintiff has also alleged that defendants' conduct is arbitrary and capricious and an abuse of discretion, contrary to 5 U.S.C. § 706(2)(A). An abuse of discretion under that provision can be shown by demonstrating a violation of constitutional, statutory, regulatory or other legal mandates. *See Ness Investment Corp. v. USDA*, 512 F.2d 706 (9th Cir.1975); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970). Here, plaintiff has alleged such abuse from violations of the Refugee Act of 1980 (8 U.S.C. §§ 1252, 1254), of the Protocol Relating to the Status of Refugees (19 U.S.T. 6223, T.I.A.S. No. 6577 (1967)), and of defendants' own regulatory standards. (*see* 128 Cong.Rec. 5532 (daily ed. Feb. 11, 1982)). In so doing, it has also stated a claim for violation of regulations.

Plaintiff has also alleged constitutional violations, sounding in due process and

equal protection. Although it is clear that distinctions among aliens based upon nationality *may* constitutionally be drawn in the immigration field, *Narenji v. Civiletti,* 617 F.2d 745, 747 (D.C.Cir.1979), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980), it is also clear that aliens *are* entitled to procedural and substantive due process, *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976). If, as plaintiff asserts, the INS has an established *policy* of denying asylum to Salvadorans, the Salvadorans are being deprived of the individual procedural consideration that they are due. If they are correct, any administrative remedies available to them in theory amount to naught in practice, and the procedure assured them by the Administrative Procedure Act may indeed have been abridged. The same may well be true of the relevant provisions of the Constitution.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss shall be denied, and this case shall proceed to motions for summary judgment or to trial.