HOTEL & RESTAURANT EMPLOYEES UNION, LOCAL 25, et al., Plaintiffs,

v.

William French SMITH, et al., Defendants.

Civ. A. No. 82–2203.

United States District Court, District of Columbia.

Sept. 25, 1984.

---

Thomas F. Cullen, Jr., Jones, Day, Reavis & Pogue, Richard S. Bromberg, of Robert A. Ades & Associates, Richard SternBoswell, of the Immigration Law Clinic, George Washington University, Roderic O.

Boggs, Washington Lawyers' Committee For Civil Rights Under the Law, and Richard McMillan, Crowell & Moring, Washington, D.C., for plaintiffs.

Thomas W. Hussey, Robert L. Bombaugh, Lauri Steven Filppu, and Allen W. Hausman, U.S. Dept. of Justice, Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, and Patricia J. Kenney, Asst. U.S. Attys., Andre M. Surena, U.S. Dept. of State, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Before the Court are defendants' two motions for partial summary judgment, along with memoranda in support thereof and in opposition thereto. This case involves two distinct issues relating to the status of the estimated hundreds of thousands of El Salvadoran nationals currently residing illegally in the United States. Defendants' first summary judgment motion involves a decision by the Attorney General not to grant the El Salvadoran nationals "Extended Voluntary Departure", hereinafter "EVD", status, which, according to Count I of plaintiff's Complaint, would have had the effect of a blanket insulation from deportation procedures for all Salvadoran nationals now in the United States until such time as the turmoil in that country subsides. The second of defendants' motions for partial summary judgment relates to Count II of plaintiffs' Complaint and the procedures utilized by the Immigration and Naturalization Service (INS), after considering advisory opinions from the Department of State, in reviewing applications for asylum made by Salvadoran nationals now illegally in the United States.

Plaintiffs in this case are the Hotel and Restaurant Workers Union, whose membership is largely made up of Salvadoran nationals, and a plaintiff/intervenor, Mauro Hernandez, himself a Salvadoran national, currently residing in this country. They have brought this suit seeking both declaratory judgments and injunctive relief on both the EVD and asylum issues. See 563 F.Supp. 157.

Plaintiffs claim that Salvadoran nationals are entitled to be granted blanket EVD status. They base this assertion on what they perceive as the controlling "humanitarian" standard for such action, which would require the Attorney General to extend EVD status to Salvadorans. Plaintiffs allege that the result of the Attorney General's denial of EVD is to deprive Salvadoran nationals of the protection of the Due Process Clause of the 5th Amendment to the U.S. Constitution. Defendant argues that this is a matter of the Attorney General's absolute discretion on issues of foreign and prosecutorial policy, and as such finds no basis for judicial review under the Administrative Procedure Act or the Constitution beyond whether the decision was rationally based. The Court agrees. Defendants further argue that EVD is extra-statutory, and as such is not a right or privilege to which due process considerations attach, an argument with which the Court also is in agreement.

Plaintiffs' second issue involves the procedures for processing and acting upon applications for asylum submitted by Salvadoran nationals. Plaintiffs contend that the existing system is fundamentally unfair and prejudicial to Salvadorans. They claim that applications for asylum by individual Salvadorans are subject to improper guidelines and as a result do not receive the individualized consideration which they claim are due them. Specifically, plaintiffs argue that the training and experience of those in the State Department who prepare advisory opinions used in making asylum determinations are inadequate, and that foreign policy considerations are improperly included in the decision making process. In addition, they contend that it is the practice of the State Department and INS to give only perfunctory consideration, as a matter of policy, to Salvadoran applications on the issue of asylum.

After careful consideration, the Court, while especially sympathetic to the plight of Salvadoran nationals and conscious of

the tumultuous situation in that country, feels it is compelled by applicable law to grant the defendants' motions for summary judgment on both Counts I and II, and as hereinafter provided, the case will be dismissed.

I) SUMMARY JUDGMENT WILL BE GRANTED FOR THE DEFENDANTS ON THE EVD COUNT SINCE EXTENDED VOLUNTARY DEPARTURE STATUS CANNOT BE CONFERRED BY THE COURTS, AS IT IS EXTRA-STATUTORY, AND A PROPER EXERCISE OF THE ATTORNEY GENERAL'S DISCRETION TO ADMINISTER THE IMMIGRATION ACT

The first Count involves the decision by the Attorney General not to grant Salvadoran nationals illegally in the United States blanket Extended Voluntary Departure status. Initially, it must be noted that the issue presented in this case, that of judicial review of the Attorney General's determination regarding a grant of EVD, is one of first impression in the Courts. EVD is an extra-statutory form of discretionary relief from the deportation provisions of the Immigration and Nationality Act of 1952, as amended. It is granted to an entire class of persons, usually based upon nationality. It is a term not found anywhere in the Immigration and Nationality Act or in the applicable regulations. Rather, the term Extended Voluntary Departure describes the Attorney General's discretion in determining the circumstances of both foreign and domestic policy which may give rise to a discretionary decision to grant a temporary suspension of deportation proceedings to members of a particular class of illegal aliens. As such, EVD is based on the prosecutorial discretion of the Attorney General after consultation or advice received from the State Department.

The Constitutional foundation for grants of EVD derives from the Executive's express and inherent authority in the areas of both foreign and prosecutorial policy. The Constitution places responsibility for the conduct of foreign affairs with the Executive branch. U.S. CONST. art. II, § 2. *United States v. Pink*, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942). "Intricately interwoven" with this plenary authority over foreign relations are actions taken in the regulation of aliens. *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89, 72 S.Ct. 512, 518–19, 96 L.Ed. 586 (1952). Regulation of immigration is an "inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950).

The Attorney General's prosecutorial discretion finds its Constitutional basis under Article III, sections 1 and 3, which the Supreme Court has interpreted to mean that discretionary matters, such as in the immigration area, belong to the plenary, if not exclusive authority of the Executive. *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974). Specifically, it has been held that a determination "to commence a deportation proceeding or not to do so" is a matter of "prosecutorial discretion." *Johns v. Department of Justice*, 653 F.2d 884, 893 (5th Cir.1981); *Weisberg v. Department of Justice*, 489 F.2d 1195, 1201 (D.C.Cir.1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). This Constitutional authority to determine when or on what basis to prosecute a case is strongest when, as here, the matter involves enforcement of immigration laws. *Harisiades v. Shaughnessy*, supra, 342 U.S. at 596–97, 72 S.Ct. at 522–23; *Ludecke v. Watkins*, 335 U.S. 160, 164, 68 S.Ct. 1429, 1431, 92 L.Ed. 1881 (1948). Further, grants of EVD do not relieve the aliens of individual adjudication and deportation procedures prescribed by the Act and regulations, but merely act to postpone those proceedings. *Cf. Attorney General v. Irish People, Inc.*, 684 F.2d 928, 984 (D.C. Cir.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). Thus, EVD is an exercise of the Executives "pure enforcement power." *Id.*

The statutory basis for the Attorney General's discretionary power to grant or deny EVD is found in the Immigration and Nationality Act of 1952, as amended by the Refugee Act of 1980. 8 U.S.C. § 1101

*et seq.* The Act provides the framework for the Attorney General's authority over aliens seeking residence or refuge in the United States. The statute charges the Attorney General "with the administration and enforcement of the Act," and empowers him to "establish such regulations ... and perform such other acts as he deems necessary for carrying out his authority...". 8 U.S.C. § 1103(a). *See, Jean v. Nelson,* 727 F.2d 957, 964–65 (11th Cir. 1984) *(en banc).* Thus, the Attorney General is vested with discretionary power to take actions and to "develop standards, principles and rules" so long as his actions are based upon "considerations rationally related to the statute he is administering." *See Fook Hong Mak v. INS,* 435 F.2d 728, 730 (2d Cir.1970). This Circuit has held that the Act "need not specifically authorize each and every action taken by the Attorney General, so long as his action is reasonably related to the duties imposed upon him." *Narenji v. Civiletti,* 617 F.2d 745, 747 (D.C.Cir.1979), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Thus, the fact that EVD is extrastatutory in no way effects its validity as a discretionary action under the Act. "The Attorney General may govern the exercise of his discretion by written or unwritten rules." *Mak,* 435 F.2d at 731. Similarly, there can be no question that EVD is "rationally related to the statute [the Attorney General] is administering." *Id.* EVD is a tool utilized by the Attorney General, after consultation with the State Department, to respond to emergency situations which might require broad application of his authority under the Act, and which demand a speedy response.

a) Judicial review does not come within the Administrative Procedure Act since EVD is not made reviewable by statute, and there exists an adequate remedy of appeal in deportation proceedings. There is no basis for the plaintiffs' blanket claims except for an abuse of discretion, which in this case cannot be said to exist.

The primary issue is whether there exists any basis for judicial review of the Attorney General's decision regarding blanket EVD status for all the Salvadoran nationals illegally in the United States.

The first step in the analysis is the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Under § 704 of that title, an agency action may only be subject to review if it is "made reviewable by statute or if it is a final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Attorney General's decision to deny EVD status to El Salvadorans is not made reviewable by any statute. Nor does the decision denying EVD status to Salvadorans in any way affect their remedies of appeal to the United States Courts of Appeal after exhausting the administrative process in deportation proceedings. The Salvadorans' "adequate remedy in a court" is found in the regulations under the Immigration and Nationality Act. Salvadorans subject to deportation, irrespective of the denial of EVD, retain the right to a hearing should such deportation proceedings be instituted. 8 C.F.R. Part 242 (1984). Nor does the Attorney General's decision not to grant EVD to Salvadoran nationals affect their right to appeal an adverse result in such a deportation hearing, both to the Board of Immigration Appeals and to the United States Court of Appeals. 8 C.F.R. Part 3 and 8 U.S.C. § 1105(a). Therefore, judicial review of the Attorney General's decision, in this broad claim under the Administrative Procedure Act, is precluded.

In addition, judicial review of agency actions is precluded when such action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The legislative history of the Administrative Procedure Act indicates that this is applicable where "statutes are drawn in such broad terms that in a given case there is no law to apply." S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945). *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). In

the case of EVD, there is indeed "no law to apply" because of its extra-statutory nature, and these aliens at the case at bar have an adequate remedy in deportation proceedings.

b) The Attorney General's decision was based on his prosecutorial discretion, was in an area of agency expertise, did not violate any established standards, and involved political, military and foreign policy considerations, constitutionally committed to the executive branch. As such, the decision is not reviewable by this Court under the circumstances of this case.

█ The factors involved in determining the propriety of judicial review of an agency's exercise of discretion are the breadth of the discretionary power, the administrative expertise as balanced against judicial competence to evaluate the action at issue, whether there exists meaningful criteria by which a court may evaluate the action, and whether the decision is one based on policies to which a court must defer to the political branches. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); *New York v. United States,* 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492 (1947); *Local 2855, AFGE (AFL–CIO) v. United States,* 602 F.2d 574, 578–80 (3rd Cir.1979). Upon weighing these factors, the Court is faced with the inescapable conclusion that the Attorney General's decision is not subject to judicial review.

█ It is clear from the discussion, *supra,* of the Constitutional basis for EVD that the decision here at issue is clearly a matter of the Attorney General's prosecutorial discretion, after his review of the evidence, to suspend, or, as here, not to suspend enforcement of the immigration laws in a specific case. It is well settled that the Executive has "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090,

3100, 41 L.Ed.2d 1039 (1974), citing, *inter alia, The Confiscation Cases,* 74 U.S. (7 Wall) 454, 457–58, 19 L.Ed. 196 (1868). The Attorney General was acting in this prosecutorial discretionary capacity when he made his decision in the case at bar, and, therefore, judicial review is inappropriate under this thread of the analysis.

There is no question that, under our system of separation of powers, matters involving an area such as foreign, military, or diplomatic policy, which has been entrusted exclusively to the Executive or Legislative branches, are subject, at most, to limited judicial review. *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). It is also well settled that "any policy toward aliens is vitally and intricately interwoven" with the conduct of this country's foreign affairs. *Harisiades v. Shaughnessy, supra,* 342 U.S. at 589–90, 72 S.Ct. at 519 (1952). The Supreme Court has recently affirmed that "matters relating 'to the conduct of foreign relations ... are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *Regan v. Wald,* — U.S. —, 104 S.Ct. 3026, 3039, 82 L.Ed.2d 171 (1984), citing *Harisiades v. Shaughnessy, supra,* 342 U.S. at 589, 72 S.Ct. at 519. This Court cannot claim to have the expertise needed to decide such issues of foreign policy, and will defer to the Executive, to whom this area has been Constitutionally entrusted. U.S. CONST. art. II, § 2; *Regan v. Wald, supra; Chicago & Southern Air Lines, Inc. v. Waterman Steamship Co.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *United States v. Pink,* 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942). Only in the case of a clear abuse of discretion may a Court impose its judgment over that of the Executive in a case such as the one at bar. *Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1199 (9th Cir.1975).

Before a Court can be assured that an abuse has occurred, there must first exist some kind of a standard by which to measure the Executive's action. In this case the plaintiffs would have us impose upon the

Attorney General a "humanitarian" standard based upon what plaintiff perceives as a pattern or practice of past EVD grants in individual cases. While agreeing that such considerations may be a factor in EVD decisions, the Court does not agree that humanitarian concerns are, or can be, the sole or overriding factor in an EVD determination. The plaintiff points out, that humanitarian concerns have been a part of such decisions in the past. However, this does not mean that a standard based solely on such concerns has evolved. There is nothing in the Immigration and Nationality Act that would establish such a standard. Indeed, such a standard would be difficult to define and enforce. Humanitarianism is a vague concept, and by its terms over-broad. For a Court to order EVD in this case would set a far-reaching precedent, wholly within the perogatives of Congress, and might then apply to all situations of widespread fighting, destruction and the breakdown of public services and order throughout the world. Also, such situations as famine, drought, or other natural disasters might at any time also raise "humanitarian" concerns, wherever they might occur. To require the Attorney General to grant blanket EVD status to all such nationals would be to open up irresponsibly the floodgates to illegal aliens, without regard to foreign policy and internal immigration concerns, or, of equal importance, to the concerns of American working men and women in the United States and our taxpayers generally.

The only remaining question concerning judicial review of the Attorney General's decision is whether the decision was rationally based. *Fiallo v. Bell*, 430 U.S. 787, 794–96, 97 S.Ct. 1473, 1479–80, 52 L.Ed.2d 50 (1977). This requires that the Attorney General exhibit some facially legitimate reason for his decision. *Narenji v. Civiletti*, 617 F.2d 745, 747–48 (D.C.Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). The Court is satisfied that the Attorney General acted rationally in making his decision. Besides foreign policy considerations, the Attorney General advances several other factors.

These include, (i) the number of illegal Salvadoran aliens currently in the United States, (ii) the current crisis in generally controlling the "floodtide" of illegal immigration, (iii) the prospect of encouraging further illegal immigration, (iv) the effect of such illegal immigration upon this country's limited law enforcement capabilities, social services and economic resources, and (v) the availability under the Immigration and Nationality Act of alternate avenues of relief, such as asylum. The aggregate of these factors is that the Attorney General did fashion his decision in a considered and rational manner.

Taking all these factors into consideration, it is difficult for this Court to see what basis or standard it has for judicial review of the Attorney General's decision. The Court concludes, therefore, that judicial review is inappropriate in this situation, and declines to strike down the Executive Department's decision not to grant blanket EVD to Salvadoran nationals.

c) The Attorney General's decision did not deprive Salvadorans of their due process rights as EVD is not a right or privilege protected by the 5th Amendment, and because the decision leaves unchanged Salvadoran rights to a hearing in deportation proceedings, and appeal thereafter to the Board of Immigration Appeals and then to the United States Courts of Appeals.

■ Plaintiffs also claim that this decision acts to deprive Salvadoran nationals of their Constitutional right to due process under the 5th Amendment of the U.S. Constitution. The Court holds that it does not. Again, EVD is extra-statutory in nature. In addition, it is clear that aliens have no Constitutional right to enter or remain in the United States. *Kleindienst v. Mandel*, 408 U.S. 753, 761, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972). Therefore, no right or privilege is involved. There has been no denial of due process since the decision leaves unaffected the right to existing INS procedures, including hearing and appeal rights. There is no Equal Protection issue

here, either. Historically, nationality-based distinctions have been seen as inevitable in the immigration field. *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977); *Mathews v. Diaz*, 426 U.S. 67, 78–80, 96 S.Ct. 1883, 1890–1892, 48 L.Ed.2d 478 (1976). Moreover, the Attorney General, acting for the Executive, has the authority to make such distinctions based upon nationality. *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C.Cir.1979). Therefore, the Court concludes that there was no violation of due process involved in the EVD decision, particularly since the plaintiffs may invoke whatever rights they have in individual deportation proceedings including the right to appeal.

d) Summary judgment is appropriate in this case because plaintiff has failed to properly refute defendant's statement of material facts which, taken as admitted, provide the basis for the legal conclusions herein.

The Court finds that judgment in this case must be for the defendant as a matter of law because it is satisfied that there exists no genuine issue of material fact. Fed.R.Civ.P. 56. *See also*, Local Rule 1–9(i). Under the Federal Rules and Local Rule 1–9(i) of this Court, the moving party is required to file a Statement of Material Facts to which there is no genuine issue. Local Rule 1–9(i) further requires that the opposing party file with its opposition a "Statement of Genuine Issues, setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." Local Rule 1–9(i). In determining the motion, "the Court may assume that the facts as claimed by the moving party in its statement of material facts are admitted to exist except as to the extent that such facts are controverted in a statement filed in opposition to the motion." *Id.*

Plaintiff in this case has failed to meet its burden to demonstrate the existence of a triable issue of fact. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d

569 (1968). Plaintiff's Statement fails to specifically and properly controvert any of defendant's enumerated material facts. Instead, what the plaintiff has done is to set forth a series of "facts" which it feels will show the existence of and subsequent violation of a humanitarian standard for the granting of EVD. In the process, Plaintiff has made no attempt to controvert those material facts set forth in the defendant's Statement, and under the Local Rule those facts as set forth by the defendant must stand as admitted. Local Rule 1–9(i) and Fed.R.Civ.P. 56.

A close reading of the plaintiff's Statement indicates a further difficulty. These purported "facts" are, for the most part, conclusions of law. Plaintiff claims that EVD has been based on a humanitarian standard, which has governed past EVD grants fifteen times over the last twenty years, and is invoked in situations of "widespread fighting, destruction and the breakdown of public services and order." Plaintiffs' Statement of Material Facts, ¶¶ 2–6. Whether such a humanitarian standard exists, or is required to exist, is a question of law. Plaintiff also claims that this humanitarian standard was violated by the Secretary of State and the Attorney General when the decision was made to deny EVD to Salvadoran nationals. Plaintiffs' Statement of Material Facts ¶¶ 9 and 10. Whether there is any such standard, and whether, assuming one does exist, it was violated, is again a question of law. Nothing in the remaining three paragraphs serves to controvert the defendant's Statement. Therefore, under the Local Rule 9–1(i), Defendant's Statement of Material facts will stand as admitted.

These facts will support the legal conclusions drawn above. There is no genuine issue as to what action the Attorney General and the Secretary of State took in respect to their decision not to grant EVD to Salvadoran nationals. Nor is there any genuine issue as to why such action was taken. What remain are issues of law, not of triable fact.

Inasmuch as the facts as admitted form a basis for the legal conclusions presented above, the Court finds that Summary Judgment is appropriate in this case in favor of the defendants.

II) SUMMARY JUDGMENT WILL BE GRANTED FOR THE DEFENDANTS ON THE ASYLUM COUNT SINCE THE PROCEDURES UTILIZED HERE AS APPLIED TO SALVADORAN ALIENS WERE PROPER AND DO NOT VIOLATE THEIR CONSTITUTIONAL RIGHTS.

Plaintiff's second Count involves the procedures utilized by the Immigration and Naturalization Service (INS) to process applications for asylum submitted by Salvadoran nationals. Specifically, they claim that the use by INS of advisory opinions prepared by the Bureau of Human Rights and Humanitarian Affairs (BHRHA), a division of the Department of State (DOS), is improper and prejudicial towards Salvadorans. Such advisory opinions are non-binding on the INS and are used by that agency in making a determination on asylum applications. Plaintiff claims that these advisory opinions are unreliable and less than competent due to what the plaintiff perceives as a lack of training, experience and proper guidance for those who prepare such opinions. In addition, plaintiff alleges that it is BHRHA's practice to give short shrift to Salvadoran applications, only spending an average of a few minutes reviewing each individual request. Finally, it is claimed that foreign policy considerations improperly color the formation of advisory opinions regarding Salvadorans. Plaintiff concludes, therefore, that INS use of BHRHA advisory opinions deprive Salvadorans of their due process rights under the 5th Amendment to the United States Constitution.

There are no genuine issues of fact in dispute here. The issues involve not the process itself, but the propriety of the process, specifically, the propriety of the DOS involvement in INS asylum decisions. Whether or not such procedures as are utilized by the INS, or by BHRHA, are proper for the purpose they serve is purely a question of law. As such, these issues may be resolved by summary judgment.

As stated earlier in this opinion, the Court has great sympathy for the plight of the Salvadoran nationals here in the United States. The Court recognizes the difficult position this class of person is in, and appreciates the noble intentions underlying this action on their behalf. However, noble intentions are not enough. This Court must apply and uphold the laws and Constitution of the United States and is constrained to limit its decisions within the perameters of the applicable law. It is with this in mind that the Court finds for the defendant and grants defendant's motion for summary judgment on the issue of political asylum.

a) Political asylum application procedures.

Under the Refugee Act of 1980, the Attorney General was required to establish asylum procedures by June 1, 1980. These procedures were established, and are found at 8 C.F.R. Parts 108, 207, 208, and 209. The determination of whether or not to grant asylum to an alien centers on whether the applicant is considered a "refugee". 8 U.S.C. § 1158(a). A refugee is defined as a person who is unwilling or unable to return to his country because of fear of persecution or a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). This definition tracks the United Nations Convention on the Status of Refugees of 1951, and the 1967 United Nations Protocol Relating to the Status of Refugees. The burden is on the alien national to establish that he is a "refugee" under the meaning of that term in the Act, and therefore eligible for asylum.

There are two routes an alien may take to apply for asylum. The alien may make his application either to the local district director of the INS, or, after deportation or exclusion proceedings have begun, to the immigration judge. 8 U.S.C. § 1253. 8

C.F.R. §§ 208.3(a) and (b). In either case, the local district director or the immigration judge must seek an advisory opinion from BHRHA. 8 C.F.R. §§ 208.7 and 208.-10(b). If the application is submitted to the district director, his decision is not subject to review. 8 C.F.R. § 208.8(c). However, the application may be renewed upon the institution of deportation proceedings. If submitted to an immigration judge, the applicant is entitled to a hearing at which both he and the INS may introduce evidence. 8 C.F.R. § 208.10(c) and (d). A decision on asylum adverse to the applicant may be appealed, along with an order of deportation or exclusion, to the Board of Immigration Appeals. 8 C.F.R. §§ 236.7 and 242.21. Finally, the decision of the Board of Immigration Appeals may be appealed to the United States Circuit Courts of Appeals. 8 U.S.C. § 1105a(a).

The core issue under plaintiff's asylum count is the procedure used by BHRHA in issuing advisory opinions. The office within BHRHA primarily responsible for issuing advisory opinions is the Office of Asylum Affairs (OAA). Mr. Jules Bassin, one of twelve DOS officials who review asylum applications, is responsible for reviewing applications submitted by aliens from Latin American, Central American and Caribbean countries, including El Salvador. In May of 1981, Mr. Bassin began evaluating all Salvadoran applications for asylum.

INS forwards to Mr. Bassin the actual application filled out by the alien or his attorney (INS Form I–589), any attachments submitted along with the application, the INS examiner's interview notes, if such is the practice of the particular district office, and a letter forwarding the application to BHRHA. Mr. Bassin then reviews each individual application and issues an advisory opinion based upon the materials before him. His decision is guided by the standards of the Refugee Act. Mr. Bassin then determines if, under the definition of "refugee" the applicant qualifies for asylum. Mr. Bassin occasionally requests further information and expertise from the DOS Desk Officer responsible for El Salvador. Mr. Bassin then prepares a form letter in most cases which states the opinion that the applicant is or is not qualified for asylum consideration.

Mr. Bassin's evaluation is then reviewed by Mr. Richard Belt, Public Policy Officer for the Bureau of Inter-American Affairs of DOS. Mr. Belt screens the application and the opinion issued by Mr. Bassin, and considers whether he agrees with the recommendation. If Mr. Belt agrees with the recommendation, the application is returned to Mr. Bassin and the opinion letter is then signed by the Director of the Office of Asylum Affairs, and forwarded to INS. INS then uses this advisory opinion in its evaluation and determination of Salvadoran asylum applications.

b) The advisory opinions used by the INS in determining political asylum applications are not improper due to the availability of expert advise on El Salvador, the sufficient training and guidance of the reviewing State Department official, and the reasonable amount of time given each individual application.

■ Plaintiff contends that Mr. Bassin, the official responsible for the initial review of asylum applications, and the subsequent issuance of advisory opinions related thereto, is inadequately trained and experienced, and therefore unqualified for making asylum recommendations. This contention is based upon deposition testimony which plaintiff claims shows Mr. Bassin to have an unclear understanding of the applicable standards relating to asylum applications. The Court finds, however, that this contention is without merit. Mr. Bassin has fifteen years of experience relating to the Foreign service which has required specific knowledge of the 1951 United Nations Convention and the 1967 Protocol relating to the status of refugees. First Bassin Dep., ¶¶ 12–14. For the past ten years, Mr. Bassin has applied the principles of the Convention and Protocol in evaluating political asylum applications for the DOS. During that ten years, the last four have been spent evaluating Salvadoran applications for asylum. In fact, it appears that DOS

would have a difficult time finding someone more experienced or well·trained for the task of reviewing Salvadoran applications.

Plaintiff's argument that the deposition testimony of Mr. Bassin points out his lack of understanding of the standards to be applied in rendering advisory opinions is also without merit. The testimony in question involved Mr. Bassin's attempts to define the phrase "well-founded fear of persecution" as used in the Act's definition of refugee. This phrase is central to the· determination of refugee status, and hence eligibility for asylum. The testimony in question (Transcript of Bassin deposition, Vol. I, page 11) was as follows:

Q: What do you understand to be the meaning of the term well founded fear of persecution?

A: I. don't know, well it's not an arbitrary fear, its not a capricious. fear. It would be a fear that's well founded. I would have to see the circumstances and look up the application, and then come to a judgment value as to whether it's well-founded or not.

Later, Mr. Bassin was asked to clarify his definition:

Q: Other than by giving me examples of the types of situations that might .constitute a well-founded fear of persecution, can you define in any more, in any other way, what you understand that term to mean?

A: Well, I don't know if I can. . It's a subjective fear and based on objective evidence.

(Transcript of Bassin deposition, Vol. I, page 64)

Based upon this testimony, plaintiff claims that Mr. Bassin's understanding of the "well-founded fear of persecution" standard is "faltering and unarticulable." It is argued that someone who is unable to articulate the very standards he is to apply should not be in the position of reviewing asylum applications. However, it is clear that this area is very general in nature, and that while the terms used therein may be, in part, subjective, they are still susceptible to an objective interpretation of the "evidence" in the applications submitted by the alien.

The basic guide in this area, as the plaintiff itself acknowledges, is the United Nations High Commissioner for Refugees (UNHCR) *Handbook.* The *Handbook* analyzes the term "well-founded fear of persecution." *Handbook* at 11–17, ¶¶ 37–65. The UNHCR *Handbook* points out that while "fear" is a subjective concept, the qualification "well-founded" implies an objective element. *Id.* at 11–12, ¶ 41. Such fear must be reasonable. *Id.* Because of the subjective nature of the term "fear", an assessment of the credibility of the applicant is necessary. *Id.* In other words, "well-founded fear" requires the weighing of objective evidence in each individual case with subjective concepts. The result is a term which is not easily defined absent a factual background upon which to overlay the subjective terminology.

This inter-twining of objective evidence with subjective terminology has been acknowledged in case law. *Rejaie v. INS,* 691 F.2d 139, 145 (3rd Cir.1982); *Rosa v. INS,* 440 F.2d 100 (1st Cir.1971); *Moghanian v. BIA,* 577 F.2d 141, 142 (9th Cir.1978). It is not surprising, therefore, that Mr. Bassin should have difficulty defining "well-founded fear" in a vacuum, without any factual background upon which to apply the term. It is not Mr. Bassin who is inarticulate, but the law which he must apply is not only vague but depends, as hereinbefore indicated, upon subjective evaluations of many factors not capable of judicial review.

Plaintiff's next contention is that the advisory opinion process is defective because those reviewing asylum applications do not have available to them needed expertise on conditions in El Salvador. The implication that the general conditions in El Salvador constitute persecution *per se* has been rejected by the Courts. *Chavez v. INS,* 723 F.2d 1431, 1434 (9th Cir.1984); *Sanchez v. INS,* 707 F.2d 1523, 1527 (D.C.Cir.1983);

*Martinez-Romero v. INS,* 692 F.2d 595, 596 (9th Cir.1982). The argument put forth by plaintiff ignores the primary focus of the process of review of asylum applications, which is to determine whether an individual would be singled out for persecution upon being returned to his homeland. To make this determination it is not necessary for the reviewing official to have detailed expertise on the general conditions in El Salvador. It is the situation of the individual applicant which is the determining factor. Thus general conditions in El Salvador are relevant only as a background upon which to review the individual claim. *See* UNHCR *Handbook* at 12, ¶ 42.

Plaintiff's next argument against the advisory opinion procedure is that, on the average, each individual asylum application submitted by Salvadorans is only allotted a few minutes review. Plaintiffs fail to show any specific harm as a result of this. Each application is reviewed on the basis of what is contained therein. The deposition testimony shows that the great majority of applications contain little or no support for the applicant's contention that he or she will be singled out for persecution if returned to El Salvador. Romero Dep., at 71–72. Without such supporting evidence little time is required to effectively evaluate an application for asylum under the existing standards. As this Circuit has declared in a case involving a Salvadoran asylum application, such conclusory allegations, unsupported by clear evidentiary proof, are insufficient to meet the requirements of the statute. *Sanchez, supra,* at 1527 (D.C.Cir.1983).

Plaintiff's final contention is that foreign policy considerations improperly influence the advisory opinion process. It is alleged that the review of advisory opinion decisions by the Bureau of Inter-American Affairs prior to such opinions being forwarded to the INS, and the involvement of the Desk Officer for El Salvador in these decisions, create a situation wherein the evaluation of asylum applications is susceptible to foreign policy considerations. The Plaintiff, however, fails to produce any material facts with which to support this conclusion.

The deposition testimony which bears upon this issue contradicts plaintiff's assertion. Mr. Peter Romero, who was the Desk Officer for El Salvador, when asked if foreign policy considerations in any way colored his recommendations on asylum applications, denied any such influence. Romero deposition at 67–68. This was echoed in the deposition testimony of Mr. Belt and Mr. Bassin, each of whom denied being in any way influenced by considerations of foreign policy in their review of individual asylum claims. Belt deposition, at 47–48; Bassin deposition, Vol. I, at 51. Plaintiff offers no material facts with which to refute the sworn testimony of these DOS officials. Plaintiff has failed to demonstrate the existence of such an impermissible influence, nor has it shown how such an influence has affected any Salvadoran asylum application.

c) Advisory opinions are properly used by the INS in deciding asylum claims and present no 5th Amendment violation since such opinions are properly formed and the applicant still has the right to hearing and appeal prior to deportation.

It is plaintiff's contention that the end result of the alleged deficiencies in the advisory opinion process is a deprivation for Salvadoran nationals of their due process rights under the 5th Amendment to the United States Constitution. The theory is that the process "taints" the advisory opinions in a manner prejudicial to Salvadorans, and that this is standard DOS procedure when reviewing Salvadoran asylum applications. It is alleged that these "tainted" opinions are then relied upon by the INS in making final asylum determinations. This allegation, however, is incorrect, as the District Director, the Immigration Judge and the Board of Immigration Appeals all have quasi-judicial safeguards built into their procedures. Plaintiffs further argue that such advisory opinions may be introduced as evidence in a proceeding before an immigration judge, that such opinions often are made without detailed explanation of the reasoning on which the.

**514**

opinion is based, and therefore become decisive or critical evidence not subject to refutation. In support of this theory, plaintiffs cite *Zamora v. INS*, 534 F.2d 1055 (2nd Cir.1976).

Plaintiff's reliance on *Zamora* is incorrect. *Zamora* involved the use of advisory opinions in the course of deportation proceedings. There, the Second Circuit held that when advisory opinions of this nature are introduced as evidence against an alien, the reasons underlying the recommendation must be made available as well. *Id.* at 1062. This is to protect the alien's right to a due process hearing by giving the alien an opportunity to refute the reasoning behind the decision. *Id.* The Second Circuit made clear that the use of such advisory opinions in the initial determination of asylum by the INS "creates no due process problem since, apart from other reasons, resort to [8 U.S.C.] § 243(h) remains open, and that provision makes a hearing procedure available." *Id.* at 1059.

Plaintiff's theory also fails for two additional reasons. First, as this Court has decided above, the advisory opinion process is reasonable and proper, and in no way "tainted." The opinions are issued by a sufficiently trained and guided official, there is adequate expertise available, and each application receives a reasonable period of review related to the amount of information the application provides. Since the advisory opinion themselves are not improper, the use of them by the INS in determining asylum is also not improper. Second, the BHRHA advisory opinions are not binding on the INS, but are merely recommendations. In addition, the statute provides for the opportunity for cross-examination by the alien facing deportation proceedings. 8 U.S.C. § 1252(b)(3). Thus, as noted by the Court in *Zamora*, the alien may bring into question the basis for such an advisory opinion in the normal course of deportation proceedings.

## CONCLUSION

The defendants' motions for summary judgment in this case on Counts I and II

involving EVD and political asylum must be granted even though this Court has held that plaintiffs had standing to sue and allowed discovery. The record discloses no valid due process or equal protection violations of the Constitution. Moreover, the procedural rights of each member of plaintiffs' union can be asserted in individual deportation proceedings with the right of appeal to the Circuit Courts, so they have an effective remedy. In addition, the extended voluntary departure question is really political and essentially a matter of foreign policy the conduct of which is committed to the Executive and Legislative branches of our government—not to the Courts in a case such as this. Therefore, while there is no claim here upon which relief may be granted, the plaintiffs have their remedies elsewhere. For all the foregoing reasons, this case be and the same is hereby dismissed, with prejudice.