**MISSISSIPPI VALLEY BARGE LINE COMPANY, Plaintiff,**

v.

**BULK CARRIERS, LTD., Import & Export Steel Corporation, Nimpex International, Inc., Insurance Company of North America, Venizelos, S.A., Nikitas K. Venizelos, Atalaya, Cia. Nav., S.A., John Doe, and others whose names are unknown to the plaintiff, the persons intended being certain other insurers of a cargo carried in the S/S DORI herein described, Defendants.**

United States District Court
S. D. New York.

June 1, 1965.

Symmers, Fish & Warner, New York City, for plaintiff.

Hill, Rivkins, Louis & Warburton, New York City, for defendants Import & Export Steel Corp., Nimpex International, Inc. and Ins. Co. of North America, Joseph T. McGowan, Clare E. Walker, New York City, of counsel.

WYATT, District Judge.

This is a motion on affidavits by defendants Import & Export Steel Corporation (Impex), Nimpex International, Inc. (Nimpex), and Insurance Company of North America (Insurance North)

(1) to dismiss the complaint for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12 (b) (6));

(2) to dismiss the complaint for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b) (1));

(3) to dismiss the complaint because a "declaratory judgment is inappropriate" (this is probably to be treated as a motion for summary judgment under the last sentence of Fed. R.Civ.P. 12(b)); and

(4) to require counsel for plaintiff to "produce substantial proof" that they were duly authorized by plaintiff to commence this action.

Under date of October 23, 1963, defendant Bulk Carriers, Ltd. (Bulk) as "Disponent Owners" of the vessel "Dori" chartered her to defendant Nimpex to carry a full cargo of steel coils on one voyage from Germany to New Orleans. No definition of "disponent owner" has been found but I assume it means a person not the actual owner but legally capable of making a charter of the vessel.

On November 4, 1963, plaintiff Barge appointed defendant Bulk its agent to solicit overseas cargo for carriage by its barges on rivers in this country.

Under date of December 13, 1963, and doubtless reflecting efforts of Bulk to secure cargo for Barge, the charter party was amended by "Addendum No. 1" in relevant part as follows: (a) the cargo was to be delivered at Chicago rather than New Orleans; (b) the "through freight rate" to Chicago was fixed and, of course, at a higher rate than that to New Orleans; (c) Bulk agreed to issue (on completion of loading at German port) to Nimpex (the "charterers") "a Mississippi Valley Barge Line Company through-bill-of-lading, as attached"; and (d) the arbitration clause was provided to read as follows:

"9—*ARBITRATION:* Should any dispute arise between the Disponent Owners and the Charterers, the matter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, and their decision, or that of any two of them, shall be final, and, for purpose, of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

It does not appear when "Addendum No. 1" was executed.

Under the same date of December 13, 1963 a "memorandum of agreement" was executed by Bulk and Barge under which it was agreed that the charter party and addendum were "sublet" to Barge, that Barge would assume all obligations of Bulk thereunder, and that Bulk "as agents for" Barge would issue a through bill of lading. It is represented for Barge that this "memorandum of agreement" was not executed "until after the DORI departed from Emden in January 1964."

The Dori was loaded in Germany, at which time bills of lading were issued by the Master covering the carriage of the cargo to New Orleans and delivery there to the order of Franklin National Bank notify Impex. It must be assumed that the delivery provisions in the bill of lading were on instructions of Nimpex, charterer of the Dori. In an affidavit, it is stated that Impex was the owner of the cargo. That the delivery port in the Master's bills of lading was New Orleans and not Chicago is consistent with the representation for Barge that the "sublet" of the charter party to Barge, while dated December 13, 1963, was not actually executed until after the Dori had sailed from Germany. It also seems fair to assume that "Addendum No. 1" was executed at or about the same time as the "sublet".

The Dori sank at a port in the Azores Islands on January 16, 1964.

Thereafter defendant Bulk, consistent with the obligations under "Addendum No. 1" and the "sublet" agreement, issued through bills of lading for the cargo over the name of Barge; the signature to the bills of lading was that of Barge by Bulk as "agents". The through bills of lading were dated December 27, 1963 and were on printed forms of Barge. The delivery ports were Chicago and St. Louis. The consignee was "order of Franklin National Bank" and to notify Impex and the Bank. The through bills of lading contained the following typed provision:

"ALL THE TERMS, CONDITIONS, LIBERTIES AND EXCEPTIONS OF THE CHARTER PARTY DATED 23.10.63 AND ADDENDUM THERETO DATED 13.12.63 ARE HEREWITH INCORPORATED. WHEREVER THE TERMS, CONDITIONS, LIBERTIES AND EXCEPTIONS OF THIS CHARTER PARTY AND ADDENDUM THERETO CONFLICT WITH THE TERMS OF PART (I) OF THIS BILL-OF-LADING, THE FORMER WILL GOVERN".

The through bills of lading were delivered by Bulk to Nimpex on January 28, 1964. Nimpex agreed that it would not tender the through bills of lading to any innocent third party without advising them that the cargo had already been lost.

Under date of May 26, 1964, counsel for movants here, on behalf of "all parties interested in the cargo", made demand of Barge that it arbitrate the dispute over responsibility for the cargo loss. In so doing, the cargo relied on the arbitration provision of "Addendum No. 1" which was asserted to be binding on Barge because of incorporation in the through bills of lading and because of the "sublet" agreement executed by Barge.

The demand for arbitration was ignored.

On October 27, 1964, Impex and Nimpex filed a petition in this Court (64 Ad. 1166) for an order directing Barge to arbitrate. 9 U.S.C. § 4

On January 7, 1965 Impex and Nimpex filed a libel in personam in this Court (65 Ad. 17) against Barge based on loss of the cargo. This libel contained three causes of action. The first and second causes of action appear to be for money damages only. The third cause of action repeats the averments of the first and then recites the claimed agreement of Barge to arbitrate. The prayer for relief in the libel is that an order directing arbitration be made. The following appears as the last paragraph of the libel:

"*TWENTY-THIRD:* Libelants allege and assert a cause of action in admiralty for the breach of a marine

contract of affreightment and Charter Party agreement and Addendum thereto, in addition to its demand for arbitration as set forth in the foregoing cause of action."

On January 8, 1965 the complaint in this action at bar was filed by Barge. The opposing affidavit states that this complaint was filed for Barge without knowledge of the libel filed by Impex and Nimpex the day before.

On January 15, 1965 Barge, respondent in the admiralty suit, filed in that suit a petition under Supreme Court Admiralty Rule 56 praying that Bulk, Veniselos, S. A., Nikitas K. Venizelos and Atalaya Cia. Nav., S. A. he made impleaded respondents. The claim of Barge asserted in the petition against the impleaded respondents is exactly the same claim asserted by Barge against them in the case at bar. The paragraphs in the petition to implead are for the most part lifted bodily from the complaint in the case at bar. Process duly issued in response to the petition of Barge to implead the four parties named above. The impleaded respondents have each appeared in that admiralty suit. Thus all of the parties to the action at bar are parties to the admiralty suit except for Insurance North.

On February 16, 1965 the present motion in the action at bar was argued and submitted.

On March 25, 1965, by order with memorandum opinion, Judge Croake granted the petition of Impex and Nimpex and directed Barge to proceed to arbitration of the dispute over the loss of the cargo on Dori. This means that Judge Croake was satisfied that Barge had made the agreement or agreements containing the arbitration clause as claimed by Impex and Nimpex. 9 U.S.C. § 4

Barge has appealed from the order of Judge Croake, the appeal has been argued, and the matter is now under consideration by the Court of Appeals.

Some few of the facts above recited have been taken from the Appendix for Appellant in the Court of Appeals. This Court has examined that Appendix and the briefs in the Court of Appeals.

I

■ Movants attack the jurisdiction of this Court because "John Doe and others" are named as defendants. There has been no service of a summons and complaint on any "John Doe" defendant. Counsel for plaintiff Barge in their memorandum of law state that there will never be any occasion for attempting such service and ask that the action be dismissed as against the "John Doe" defendants. This is both appropriate and reasonable. Accordingly, the defendants named as "John Doe and others  *  *  * "  are hereby dropped as parties to this action. Fed.R.Civ.P. 21. The words "John Doe" and all following words through the word "described," are hereby struck from the caption of the complaint and subparagraph (h) of paragraph SECOND of the complaint is hereby struck therefrom.

II

In so far as the motion seeks an order requiring counsel for plaintiff Barge to produce proof of their authority to commence this action for Barge, the motion is denied.

III

■ The serious question is whether this action for a declaratory judgment should be entertained. The fundamental principle is that the Court has a discretion to refuse a declaratory judgment and should so exercise its discretion where a more appropriate or more effective remedy exists, other than the declaration sought. Larson v. General Motors Corp., 134 F.2d 450, 453 (2d Cir. 1943); Zenie Bros. v. Miskend, 10 F.Supp. 779, 782 (S.D.N.Y.1935); 6 Moore's Federal Practice (2d ed.) 3031–32.

As between Barge on the one hand and Impex and Nimpex on the other, there

are two pending actions, the petition for arbitration and the libel in admiralty. If, as Judge Croake has held, arbitration is required, then the petition proceedings are far more appropriate and effective than the case at bar. Even if Judge Croake should be found to be in error, it would seem that a reversal of his order would result in a remand to this Court for trial of the issue of the making of the agreement. 9 U.S.C. § 4.

■■ In any event, if no arbitration is properly to be had, all the parties (except Insurance North) are before the Court in the admiralty suit, which is the traditional and normal vehicle to determine claims as between cargo and carriers. The absence of Insurance North from the admiralty suit is of no significance. As insurer of the cargo, Insurance North is certainly not a necessary party and indeed may not even be a proper party. The claims of Barge as against Bulk, Venizelos, S. A., Atalaya Cia. Nav. S. A., and Venizelos individually are all fully protected by their assertion in the admiralty suit.

It is also to be noted that the arbitration petition and the libel were filed *before* the case at bar was commenced. Indeed, if Barge had known on January 8, 1965 that the admiralty suit had been commenced the day before, the chances are that the complaint in the case at bar would not have been filed.

■ There seems no reason why three proceedings should be pending over the same dispute. In such a situation, it is proper to employ a chronological test and to dismiss the proceeding last commenced. See 6 Moore's Federal Practice (2d ed.) 3042.

■ For the reasons set forth, this action ought not to be entertained. The Clerk is directed to enter judgment in favor of defendants Import & Export Steel Corporation, Nimpex International, Inc., and Insurance Company of North America dismissing the complaint against said defendants.

So ordered.