Om Prakash JAIN, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 437, Docket 79–4138.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1979.

Decided Dec. 21, 1979.

---

Peter Hirsch, New York City (Antonio C. Martinez, New York City, of counsel), for petitioner.

Thomas H. Belote, Sp. Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Michael H. Dolinger, Asst. U. S. Atty., New York City, of counsel), for respondent.

Before FEINBERG and MANSFIELD, Circuit Judges, and MISHLER, Chief District Judge.*

FEINBERG, Circuit Judge:

Om Prakash Jain, a citizen of India in this country on a nonimmigrant business visa, petitions for review of a decision of the Board of Immigration Appeals, which denied his application for adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255. The Board based its denial, in the exercise of its discretion, on a finding that petitioner entered the United States with a preconceived intent to remain permanently in this country. Petitioner's principal claim is that this is an improper reason for denying relief under section 245. For reasons given below, we reject this contention, along with petitioner's other arguments. We therefore deny the petition for review and affirm the decision of the Board.

## I

The facts, as they appear in the record before us, may fairly be summarized as follows. This is petitioner Jain's third stay in the United States. The first began in June 1974, when he was 23 years old and was admitted on a nonimmigrant visa as a visitor for business. Jain had obtained that visa as the proprietor and business representative of a company located in Jaipur, India, which exported gems, beads and semi-precious stones. Jain remained here for four to five weeks looking for customers, but left without success. A little over a year later, Jain returned in the same capacity as before, and again found no customers. After staying in this country a month, Jain again departed. While he was here, however, Jain apparently conceived the idea of creating a company within the United States to import beads and jewelry from India and keep an inventory here. This would allow Jain to guarantee quick delivery to potential customers, thus overcoming the difficulty he had earlier encountered in seeking to sell his goods. Before he left this country on this second visit, Jain retained an attorney, created a new import company supposedly located in the room at the hotel where he stayed, filed a certificate of doing business under the assumed name of Asian Imports and obtained a social security number for himself.

Upon his return to India, Jain quickly liquidated his export firm in Jaipur by turning it over to his brother. Thereafter, he reentered the United States in January 1976 on a nonimmigrant business visa good for four months, as the representative of his former export business. The true reason for his return, however, was to run Asian Imports, his newly established enterprise here. Within a month, Jain also applied to the Immigration and Naturalization Service for adjustment of his status to that of permanent resident alien. The basis of the application was his alleged status as an investor, a term of art in this context more fully described below.

Two years later, the District Director of the Service denied Jain's application for adjustment of status because of his lack of good faith in applying for his nonimmigrant visa abroad. After Jain failed to depart voluntarily, the Service began deportation proceedings. Before an immigration judge, Jain conceded his deportability, but again sought adjustment of status as an investor and, in the alternative, applied for reinstatement of voluntary departure sta-

* Honorable Jacob Mishler, Chief Judge of the Eastern District of New York, sitting by designation.

tus.[1] After a hearing, the immigration judge held in August 1978 that Jain did not qualify as an investor and, alternatively, that even if he did, his application would be denied on discretionary grounds because Jain last entered this country with a preconceived intent to remain permanently. On appeal, the Board in July 1979 affirmed the decision of the immigration judge on the second, discretionary ground, and granted Jain again the privilege of voluntary departure. Jain's petition to us for review allows him to enjoy the automatic stay of deportation that accompanies such action, 8 U.S.C. § 1105a(a)(3), and almost four years have now elapsed since Jain's entry in January 1976 on a four-month business visa.

## II

Before discussing the main issue on appeal, it is helpful to examine briefly the relevant statutory framework. The Immigration and Nationality Act (the Act) distinguishes between two groups of entering aliens—the immigrant and the nonimmigrant. The immigrant seeks entry on a permanent basis as a resident. Prior to entry, an immigrant must obtain an immigrant visa at a consular office abroad. Such visas are divided into various preference categories and since the number of immigrant visas available during one year is limited for certain categories, immigrant visas are issued in chronological order to qualified applicants. See 1A C. Gordon & H. Rosenfield, Immigration Law and Procedure § 3.4a.

■■■ The Act presumes that entering aliens seek to do so as immigrants. Consequently, nonimmigrants—those aliens seeking entry only for a limited time and purpose—bear the burden of demonstrating to the United States consular officials abroad and the immigration authorities in this country that they are bona fide nonimmigrants. 8 U.S.C. §§ 1184, 1361. Jain, like many nonimmigrants, obtained entry under a nonimmigrant visa for business. Such a visa allows an alien to conduct business in the United States for a foreign employer for a limited period. 8 C.F.R. 214.2(b). However, in order to establish his bona fide nonimmigrant status and thereby qualify for such a visa, a nonimmigrant is required to demonstrate to the satisfaction of the immigration authorities that he has a foreign residence that he has no intention of abandoning and that he will depart voluntarily at the end of his authorized stay. 8 U.S.C. § 1101(a)(15)(B).

■■■ Under earlier versions of the Act, nonimmigrant aliens who sought to adjust their status to that of immigrants were required to leave the country and seek reentry as immigrants. To ameliorate this hardship, the Immigration and Naturalization Service devised an administrative procedure, known as pre-examination, under which nonimmigrant aliens were examined by immigration officials in the United States and were issued an immigrant visa by the consular office in Canada if their admissibility as immigrants was established. See 2 C. Gordon & H. Rosenfield, supra, § 7.3a. This procedure was used extensively for many years.[2] In 1952, Congress enacted section 245 of the Act, 8 U.S.C. § 1255, to obviate the need for the pre-examination procedure. The current version of the statute provides in pertinent part:

(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for perma-

---

1. Section 244(e) of the Act, 8 U.S.C. § 1254(e), authorizes the Attorney General, in his discretion, to grant voluntary departure to an alien who is otherwise subject to deportation. An alien who is granted voluntary departure avoids the stigma of deportation and is allowed to choose his destination. Furthermore, future reentry into the United States is considerably easier for an alien who has departed voluntarily than for one who has been expelled.

2. The Service processed over 45,000 pre-examination cases from 1935 to 1950. Sofaer, The Change of Status Adjudication: A Case Study of the Informal Agency Process, 1 J. Legal Studies 349, 351 (1971).

nent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.

Thus, a nonimmigrant alien may now adjust his status to that of an immigrant without leaving the country if he is admissible for permanent residence and is eligible for an immigrant visa, which is "immediately available" to him. However, even if the nonimmigrant satisfies these express statutory requirements, the Service has discretion under section 245 to deny the application for adjustment of status. Furthermore, the alien bears the burden of persuading the Service to exercise its discretion favorably, since adjustment of status under section 245 is considered to be extraordinary relief. See 2 C. Gordon & H. Rosenfield, supra, § 7.7d.

The deceptively brief statutory requirements of section 245 nonetheless pose complex administrative problems. One major obstacle facing section 245 applicants is to demonstrate that an immigrant visa is "immediately available." The law governing the availability of visas is complicated, and if a nonimmigrant cannot establish an exemption from the numerical limitations applicable to certain categories of immigrant visas, he must await the chronological distribution of such visas. Furthermore, certain categories of immigrant visas are unavailable unless the applicant either obtains a certification from the Secretary of Labor that his employment in this country will not affect the American labor market adversely or establishes an exemption from this certification requirement. Jain apparently was eligible only for this type of visa and therefore attempted to establish an exemption from the certification requirement as an investor in a domestic enterprise. The investor exemption, at the time Jain applied, allowed waiver of the certification requirement if the alien had invested over $10,000 in an enterprise that he managed and that directly created domestic job opportunities.

*Mehta v. Immigration and Naturalization Service*, 574 F.2d 701 (2d Cir. 1978). While Jain's investment in Asian Imports apparently satisfied the requisite amount, the immigration judge found that Jain was ineligible for the investor exemption because his enterprise had "failed to expand job opportunities for anyone in this country." Relying on the authority of *Mehta*, supra, the judge therefore found that Jain had failed to demonstrate that an immigrant visa was "immediately available." Although this determination of statutory ineligibility seems amply supported by the record, the Board of Immigration Appeals affirmed the denial of section 245 relief on the second rationale offered by the immigration judge—that Jain's application did not warrant a favorable exercise of discretion. We now turn to this issue.

### III

The immigration judge ruled that even if Jain were "statutorily eligible" for adjustment of status, relief would be denied as a discretionary matter. Because Jain had already liquidated his business in India and made plans to operate Asian Imports in this country, the judge concluded that Jain had "not been candid" with the immigration authorities when he last entered the country on a nonimmigrant visa for business and that his application presented no "outstanding or unusual equities" warranting a favorable exercise of discretion. The Board of Immigration Appeals adopted this ground for decision, holding that the evidence supported "the immigration judge's conclusion that [Jain] entered the United States with a preconceived intent to remain permanently" and that such a finding would support a discretionary denial of status adjustment.

Petitioner now argues that his preconceived intent to remain permanently in this country after entering on a temporary nonimmigrant visa was an improper basis for denying discretionary relief. The issue is an important one, and apparently has not been addressed in a published opinion of

this court. However, a number of other circuits have considered whether the good faith of an alien's entry as a nonimmigrant is a proper consideration in the exercise of discretion under section 245.[3] The most extensive discussion of the issue is by the Third Circuit, sitting en banc in *Ameeriar v. Immigration and Naturalization Service*, 438 F.2d 1028 (3d Cir. 1971). Both the majority opinion and the dissent of Judge Gibbons rely heavily upon the legislative history of section 245, although their interpretations differ. The original version of section 245 enacted in 1952 to replace the pre-examination procedure authorized the Attorney General, through the Service, to grant relief "under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants." 66 Stat. 217. Therefore, good faith entry as a nonimmigrant was apparently regarded as a condition precedent to the favorable exercise of discretion. This requirement was deleted in the 1960 amendments to the Act in order to enlarge the Service's discretion to act favorably on behalf of nonimmigrants who were otherwise eligible for admission as immigrants. S.Rep.No. 1651, 86th Cong., 2d Sess. (1960), reprinted in 1960 U.S.Code Cong. & Admin.News, pp. 3124, 3146–47. See generally 2 C. Gordon & H. Rosenfield, supra, § 7.7a. However, the Service thereafter took the position that the absence of good faith entry, even though no longer a statutory bar to section 245 relief, was nonetheless a factor relevant to the favorable exercise of discretion. See Sofaer, The Change of Status Adjudication: A Case Study of the Informal Agency Process, 1 J. Legal Studies 349, 374–76 (1972). The majority in *Ameeriar*, as well as the other circuits that have considered the issue, adopted this view.

While most authority thus strongly supports the position taken by the Service here, the arguments of the dissenters in *Ameeriar* cannot be lightly dismissed. In a typically thorough and forceful opinion, Judge Gibbons, joined in dissent by then Chief Judge Hastie and Judge Aldisert, argued that a preconceived intention to remain in the United States was an improper discretionary basis for denying adjustment of a nonimmigrant's status unless the alien had also .intended to circumvent quota restrictions. On this view, which relied heavily on legislative history, apparently relief could be denied for this reason only if the alien obtained a nonimmigrant visa in bad faith because he was ineligible for an immigrant visa quota number. Since there was apparently no quota restriction applicable to the Afghanistanian petitioners in *Ameeriar*, the dissenters believed that denial of section 245 relief was an abuse of discretion.[4]

While the statutory question is not free from doubt, we nonetheless believe that the majority view is more persuasive. Although the legislative history relied on by the dissenters in *Ameeriar* is not without force, it is at best ambiguous. In support of his narrow reading of the proper grounds for denying discretionary relief, Judge Gibbons cited the Senate Report accompanying the 1960 amendments to section 245, which noted that adjustment of status was available to those nonimmigrant aliens who entered "without any intention of circumventing quota restrictions." S.Rep.No. 1651, supra, 1960 U.S.Code Cong. & Admin.News at 3147. However, the same Senate Report also notes that the Act requires that the nonimmigrant alien seeking section 245 relief entered "in good faith" and without the

---

**3.** See, e. g., *Faddah v. Immigration and Naturalization Service*, 553 F.2d 491, 495 (5th Cir. 1977); *Soo Yuen v. Immigration and Naturalization Service*, 456 F.2d 1107 (9th Cir. 1972) (per curiam); *Chen v. Foley*, 385 F.2d 929, 935–36 (6th Cir. 1967), cert. denied, 393 U.S. 838, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968).

**4.** Judge Freedman, in a separate dissenting opinion joined by Chief Judge Hastie, would have vacated the Service's order because the Attorney General's delegation of his power to the Board was "invalid because he failed to designate any policy objectives or standards, or even relevant factors to guide those he authorized to act in his name." 438 F.2d at 1041. Cf. similar criticism in Sofaer, supra, at 372. Petitioner has not made such an argument here.

intent to circumvent "any other law relating to immigration." Id. Thus, the legislative history of section 245 also offers some support for the Service's position that the good faith entry of a nonimmigrant is relevant to the favorable exercise of discretion under that provision.

Furthermore, allowing the Service the discretion to deny section 245 relief to nonimmigrant aliens who enter in bad faith appears to comport with the proper administration of the statute. As previously noted, the Act distinguishes between immigrants and nonimmigrants and specifically requires those seeking nonimmigrant status to establish that they have no intention of abandoning their foreign residence and that they will depart voluntarily at the end of their authorized stay. We do not know whether Jain would have received an immigrant visa had he applied for one in India with a true statement of his intent. But had the true facts been known, he clearly would not have received a nonimmigrant visa because he would not have been entitled to one. Jain did not seek entry into the United States to represent a foreign employer for a limited period; he instead sought entry to remain permanently and to run his own business here. To require the Service to disregard this misrepresentation by Jain would effectively undercut the Act's requirement that nonimmigrants demonstrate their bona fide status. In contrast, permitting the Service to deny section 245 relief based on the nonimmigrant's lack of good faith protects the integrity of the consular procedures established by the Act.[5]

Finally, it should be noted that denial of section 245 relief, when coupled with a grant of voluntary departure, is a lenient disposition of what might possibly be regarded as fraud. Although denied an adjustment of status, Jain is not precluded

from seeking entry as an immigrant through the normal process established by the Act. Since the Service alternatively might have attempted to exclude Jain permanently under section 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19), on the ground that he obtained his nonimmigrant visa through fraud, we find the Service's resort to the far less drastic remedy of denying section 245 relief to be a preferable disposition. Cf. *Lee v. Immigration and Naturalization Service*, 446 F.2d 881 (9th Cir. 1971) (per curiam).

Thus, we are content to adopt the majority view espoused in *Ameeriar*, knowing full well that in this area Congress legislates frequently and can correct us if we are wrong. On this reading of section 245, it is clear that the Board's decision was not an abuse of discretion. The immigration judge characterized Jain as not "candid" in his dealings with the immigration authorities when he reentered the United States on his nonimmigrant business visa. We find that the record supports such a conclusion. Furthermore, Jain's application presented no unusual equities. There were no close family ties in this country and Jain did not show that compliance with normal immigration procedures would cause a severe hardship.

**IV**

Jain also argues on appeal that he was denied due process because he was unable to appeal the original denial of his section 245 application directly and could only do so in the context of deportation proceedings. We find this argument to be without merit. Although the regulations do preclude a direct administrative appeal from the denial by a district director of a section 245 application, 8 C.F.R. § 245.-

---

**5.** The majority opinion in *Ameeriar* put it well:

It should be remembered that any alien who applies for a nonimmigrant visa must, as required by statute, . . . demonstrate to the satisfaction of the American consul in his home country and to the immigration officials upon his arrival in the United States that he fully intends to return to his home country. Therefore, absent an administrative

error, any alien who arrives in the United States with the fixed intention to remain permanently has misrepresented his intention to the immigration authorities. An applicant who has thus misled immigration officials in an attempt to circumvent established procedures presents a weak case for the favorable exercise of the Attorney General's discretion. 438 F.2d at 1033 n.6.

2(a)(4), the alien is entitled to a de novo review of his application in the context of deportation proceedings. Id. We consider this dual opportunity to present a section 245 application to provide ample process, particularly in light of the discretionary nature of section 245 relief. The fact that the second consideration of the application takes place within the context of a deportation proceeding is irrelevant. Petitioner's argument to the contrary assumes that Jain could have avoided deportation proceedings simply by choosing not to renew his section 245 application. However, since Jain's deportability as an overstay was clear, the initiation of deportation proceedings was a matter over which he had no control.

Accordingly, the petition for review is denied.