**YIM TONG CHUNG, et al., Plaintiffs,**

v.

**William French SMITH, et al., Defendants.**

**No. 84 Civ. 3125 (JES).**

United States District Court,
S.D. New York.

July 31, 1986.

complaint is dismissed.

---

**13.** The Secretary's additional argument that the claims are not ripe is not considered since the

Gim & Wong, P.C. (Benjamin Gim, of counsel), Lawyers Committee for Intern. Human Rights (Arthur C. Helton, of counsel), Asian American Legal Defense and Education Fund (Margaret Fung, Arthur J. Soong, of counsel), New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Thomas E. Moseley, Sp. Asst. U.S. Atty., of counsel), New York City, for defendants.

## OPINION AND ORDER

SPRIZZO, District Judge:

### FACTS

The fifteen plaintiffs in this action are natives and citizens of the People's Republic of China ("PRC") who are currently in this country. Each plaintiff had apparently[1] received a passport from PRC authorities[2] and then applied for and received a non-immigrant visa from United States ("U.S.") consular officials in China. *See* Affidavit of Christine Petersen ("Petersen Aff.") at ¶¶ 2–3, 11–22, & Ex. A. Thirteen of the plaintiffs applied for and obtained tourist visas,[3] and the other two applied for and obtained non-immigrant student visas.[4] Between 1980 and 1982, following issuance of these non-immigrant visas, the plaintiffs were admitted to the United States, and authorized to remain for varying specified periods of time.[5]

A majority of the plaintiffs remained in the United States beyond the period of

1. Defendants have submitted the affidavits of Christine Petersen, dated October 18, 1984 ("Petersen Aff."), J. Scott Blackman, dated October 18, 1984 ("Blackman Aff."), and Jill H. Dufresne, Acting Assistant District Counsel of the New York District of the Immigration and Naturalization Service, dated April 1, 1985 ("Dufresne Aff."). Plaintiffs' counsel, Susan Wong, filed her affidavit on April 22, 1985. In setting out the factual background to this case, the Court relies to a certain extent upon these affidavits.

2. The PRC imposes legal controls on the departure of its nationals; a citizen who seeks to leave the PRC must first obtain travel authorization in the form of a passport issued by his local public security bureau. *See, e.g., Chun v. Sava,* 708 F.2d 869, 870–71 (2d Cir.1983); U.S. Department of State, Country Reports on Human Rights Practices for 1983, Joint Committee Print, 98th Cong., 2d Sess. 750–51 (1984).

3. Under section 101(a)(15)(B) of the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101(a)(15)(B) (1982), such a visa is available only to "an alien ... having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States ... temporarily for pleasure," and is customarily referred to as a "B–2" visa. *See* 22 C.F.R. § 41.12 (1985). To qualify for such a visa, each plaintiff would have been required to demonstrate to the appropriate American counsul official(s) that he satisfied the conditions set out in 8 U.S.C. § 1101(a)(15)(B), and that, *inter alia,* he intended to "depart from the United States at the expiration of his temporary stay...." as a bona fide tourist. *See* 22 C.F.R. § 41.25(a)(1) (1985).

4. Such a visa is available only to "an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning or other recognized place of study in the United States...." *See* 8 U.S.C. § 1101(a)(15)(F)(i) (1976); *see also* 8 U.S.C. § 1101(a)(15)(F)(i) (1982) (stating that such a visa is available "solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States....").

5. Two of the plaintiffs were admitted in New York City, while the remainder entered at Anchorage, Alaska or San Francisco, and later came to New York. *See* Petersen Aff. at Ex. A (setting forth the authorized admission date for each plaintiff).

their authorized admission, *see id.* at ¶¶ 11–22, & Ex. A, thus rendering themselves deportable pursuant to section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2). These plaintiffs filed applications for political asylum, *see* 8 C.F.R. § 208.1, with defendant Sava, the New York District Director for the Immigration and Naturalization Service ("INS"). The other plaintiffs filed asylum applications prior to the expiration of their authorized admissions. These applications were submitted pursuant to the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102 *et seq.*, and its implementing regulations. *See* 8 U.S.C. § 1158(a) (1982); 8 C.F.R. § 208.1 *et seq.*

Each such asylum application, along with any supporting documents, was submitted on INS Form I–589. Each plaintiff then appeared with his attorney or designated representative for a personal interview with an INS officer, at which "each plaintiff ... testified under oath in support of his claim that he was qualified for asylum as a person who was unable or unwilling to return to China because of persecution or a well-founded fear of persecution on account of race, religion, nationality, political opinion or membership in a particular social group." *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Memo") at 2. Following that interview, each plaintiff was granted employment authorization pursuant to 8 C.F.R. § 109.1(b)(2) as a "non-frivolous" asylum applicant, and an advisory opinion was requested from the State Department's Bureau of Human Rights and Humanitarian Affairs ("BHRHA") pursuant to 8 C.F.R. § 208.7 and INS Operations Instruction ("OI") 208.9b. *See* Petersen Aff. at ¶ 5.

Following consideration of the applications, INS notified each plaintiff, in a letter issued by defendant Sava, of its intention to deny the asylum application. Attached to each such letter was an advisory opinion from the State Department's BHRHA. Each letter informed the asylum applicant of a 15–day period within which the applicant could submit evidence in rebuttal of that opinion.

There is some dispute as to whether each plaintiff submitted a rebuttal statement within the time allotted. *Compare* Pl. Memo at 4 *with* Defendants' Memorandum of Law in Support of Government's Motion to Dismiss and/or for Summary Judgment ("Def. Memo") at 12–13. At any rate, following the submission of rebuttal evidence, if any, each plaintiff received a letter from defendant Sava denying the asylum application and terminating employment authorization under 8 C.F.R. § 109.1(b)(2).

These decisions of the District Director also advised the plaintiffs that their applications for asylum could be renewed in deportation proceedings before an Immigration Judge. *See, e.g.,* Ex. D to Complaint. Plaintiffs were also advised that in those proceedings they could apply for withholding of deportation pursuant to Section 243(h) of the Act, 8 U.S.C. § 1253(h). *See, e.g.,* Ex. D to Complaint.[6] By written submission dated January 9, 1984, plaintiff Gang Wang specifically stated, through his present attorneys, that he wished "to renew his request for political asylum before the Immigration Judge." *See* Petersen Aff. at Ex. C.

With one exception,[7] deportation proceedings have been instituted against the plaintiffs. *See* Blackman Aff., *supra* note 1, at ¶¶ 3–16. These proceedings are at different stages before various Immigration

---

6. Under section 243(h), as amended by the Refugee Act of 1980, relief is no longer discretionary and is available to preclude the deportation of an alien to any country where the alien's "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1253(h)(1)

(1982); *INS v. Stevic,* 467 U.S. 407, 411, 104 S.Ct. 2489, 2490, 81 L.Ed.2d 321 (1984).

7. Hui Fang Zhang is the accompanying daughter of Xi Li Zhang, *see* Petersen Aff. at ¶ 13, and thus can renew her asylum application in her mother's deportation proceeding. *See* 8 C.F.R. § 208.1.

Judges.[8] *See id.* at ¶¶ 5, 6, 11, 12, 13, 15; *see also* Dufresne Aff., *supra* note 1, & Exs. A–E. Plaintiffs Fu Shen Chen and Gang Wang failed to appear at their scheduled deportation hearings. *See* Blackman Aff. at ¶¶ 9, 14. Gang Wang apparently arranged for a rescheduled deportation hearing and, in the alternative, renewed his application for political asylum. *See* Dufresne Aff. at ¶ 10.

On May 4, 1984, the plaintiffs initiated the instant action by filing a "Complaint For Declaratory And Permanent Injunctive Relief." *See* Complaint at 1.[9]

> Plaintiffs ... seek review of the decisions of the Immigration & Naturalization Service (INS) denying their applications for political asylum on the grounds that these "decisions" were prejudged, not rendered on an individual basis, and based upon impermissible State Department adjudications and factors unrelated to the circumstances of the individual cases, in violation of their rights under statute and regulation and to due process of law.

*See* Complaint at ¶ 1.

Defendants have filed a "motion to dismiss [the complaint] and/or for summary judgment," contending that: (1) plaintiffs' claims should not be entertained by this Court, or in the alternative, that the District Director's denial of asylum should be sustained; and (2) plaintiffs' claims with respect to work authorization should be dismissed for lack of subject matter jurisdiction and failure to state a claim. Because the Court has considered matters outside of the pleadings, the motion shall be treated as one for summary judgment

and disposed of as provided in Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b)(6). For the reasons which follow, the Court concludes that defendants' position that the Court should not review the merits of plaintiffs' claims at this time is correct, and that the motion to dismiss and/or for summary judgment should be granted.

**DISCUSSION**

The Second Circuit has succinctly delineated the asylum procedure adopted by the Attorney General pursuant to the directives of the Refugee Act of 1980, as set forth in 8 C.F.R. Part 208:

> There are five steps in the asylum procedure: preparation and filing of the application for asylum, examination in person by an immigration officer or judge, an advisory opinion from BHRHA, a written decision of the District Director, which may not be appealed, and renewal of the denied asylum request before an immigration judge in exclusion or deportation proceedings.

*Yiu Sing Chun v. Sava,* 708 F.2d 869, 873 (2d Cir.1983) (footnotes omitted); *see also* Note, *The Right of Asylum Under United States Immigration Law,* 33 U. Fla.L.Rev. 539, 560–61 (1981). Plaintiffs would, in derogation of that holding, add an additional step to that procedure, i.e., review by the District Court of the correctness of the District Director's decision denying asylum.

There is and can be no question that plaintiffs can assert any claims they have with respect to political asylum before an Immigration Judge in deportation or exclusion proceedings with a subsequent appeal to the Board of Immigration Appeals

---

**8.** Plaintiffs Kuan Chun Tu and Bai Qiao Wang have already renewed their asylum claim(s) before Immigration Judge Anthony M. DeGaeto, who denied the claim(s) in a decision dated June 20, 1984. *See* Blackman Aff. at ¶ 8, & Ex. B. The matter is apparently on appeal to the BIA, with Tu and Wang raising the issues presented here. *See id.* at ¶ 8, & Ex. C.

**9.** Although counsel for plaintiffs stated at oral argument of the motion that plaintiffs were not seeking injunctive relief, both the complaint and Plaintiffs' Memorandum of Law in Opposition

to Defendants' Motion to Dismiss ("Pl. Memo") are to the contrary. *See, e.g.,* Pl. Memo at 50. The Court notes that plaintiffs have filed no motion to amend the pleadings, and further notes that, because plaintiffs seeks, *inter alia,* to "enjoin defendant Sava from taking any steps to deport any of the plaintiffs," *see* Complaint at ¶ IX(f), and deportation proceedings are either ongoing or imminent, plaintiffs' request for injunctive relief might properly be characterized as a request for both preliminary and permanent injunctive relief.

("BIA") and judicial review by the Court of Appeals pursuant to 8 U.S.C. § 1105a. Thus, the effect of adopting plaintiffs' position would be to afford judicial review twice—once by resort first to the District Court from the discretionary denial of asylum by the District Director, and then again to the Court of Appeals pursuant to § 1105a following an unsuccessful *de novo* presentation to an Immigration Judge and appeal to the BIA.

Such a tortuous procedure would clearly circumvent the asylum procedure as described in *Chun, supra,* 708 F.2d at 873. *See also Hotel & Restaurant Employees Union, Local 25 v. Smith,* 594 F.Supp. 502, 510–11 (D.D.C.1984).[10] In short, dismissing plaintiffs' claims at this stage does not deny them judicial review, but merely defers it to a later date. *Cf. Chen Chaun-Fa v. Kiley,* 459 F.Supp. 762, 765 (S.D.N.Y. 1978).[11]

In this sense, the Refugee Act did not functionally change the prior asylum process, whereby an alien could apply to the District Director for asylum pursuant to 8 C.F.R. § 108.1 *et seq.* (1979) (superseded by 8 C.F.R. § 208.1 *et seq.* (1980)), and later request withholding of deportation pursuant to Section 243(h) of the Act, 8 U.S.C. § 1253(h). This process was viewed as a continuous, ongoing administrative process. *See Zamora v. INS,* 534 F.2d 1055, 1059 (2d Cir.1976); *Chen Chaun-Fa, supra,* 459 F.Supp. at 765. The Supreme Court has unanimously recognized that "[t]he principal motivation for the enactment of the Refugee Act of 1980 was a desire to revise and regularize the procedures governing the admission of refugees into the United States." *See INS v. Stevic,* 467 U.S. 407, 425, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984).

While the District Director's asylum decision is "final" in the sense that it is a non-appealable, discretionary decision, *see* 8 U.S.C. § 1158; 8 C.F.R. § 208.8(c), *Stevic, supra,* 467 U.S. at 423, & n. 18, 104 S.Ct. at 2497 & n. 18, it is not in any sense a final administrative action. *Cf. Jain v. INS,* 612 F.2d 683, 689–90 (2d Cir.1979) *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *Zamora, supra,* 534 F.2d at 1059; *Hotel & Restaurant Employees, supra,* 594 F.Supp. at 506–07; *Chen Chaun-Fa, supra,* 459 F.Supp. at 765–66 ("an interpretation that would permit an alien to appeal

---

**10.** Indeed, the very purpose of the provision for petition to the Courts of Appeals in § 1105a as the exclusive remedy for reviewing a final order of deportation was to prevent "dilatory tactics in the courts" designed to forestall the departures of deportees and to fashion a "single, separate, statutory form of judicial review of administrative orders for the deportation ... of aliens...." *See Foti v. INS,* 375 U.S. 217, 225, 84 S.Ct. 306, 312, 11 L.Ed.2d 281 (1963) (footnote omitted) (quoting H.R.Rep. No. 1086, 87th Cong., 1st Sess. 22–23 (1961) U.S.Code Cong. & Admin. News 1961, p. 2950); *see also United States ex rel. Gagliano v. Esperdy,* 239 F.Supp. 968, 972 (S.D.N.Y.1965) (purpose of statute was "to eliminate delaying tactics in this type of proceeding which resulted from their being entertained in overburdened District Courts"). The wisdom of the scheme would seem borne out in this case, as plaintiff Yim Tong Chung's application for political asylum before an Immigration Judge has been granted, and INS did not appeal that decision. *See* Dufresne Aff. at ¶ 4 & Ex. A.

**11.** In *Chen Chaun-Fa,* Judge Sand found that the District Courts' subject matter jurisdiction under the Immigration and Nationality Act was "limited to causes arising under subchapter II [of the

Act]." *See Chen Chaun-Fa, supra,* 459 F.Supp. at 764 (footnote omitted). Authority for the asylum procedures enacted pursuant to the Refugee Act lies in sections 101 (8 U.S.C. § 1101) and 208 (8 U.S.C. § 1158) of the Immigration and Nationality Act. *See* 8 C.F.R., Pt. 208 (1985). Section 1101 is a definitional section, which appears in the Act under "Subchapter I—General Provisions." Section 1158 deals with asylum procedures, and appears under "Subchapter II—Immigration." Thus, there may be a colorable basis for this Court's exercise of subject matter jurisdiction in this case. However, for the reasons detailed *infra,* the fact that such jurisdiction may exist does not necessarily entitle plaintiffs to the relief they seek. However, it does seem clear from this analysis that plaintiffs' claims with respect to work authorization, derived from Section 103 of the Act, 8 U.S.C. § 1103—located in Subchapter I—must be dismissed for lack of subject matter jurisdiction. *Cf. Martinez v. Bell,* 468 F.Supp. 719, 726 n. 6 (S.D.N.Y.1979); *Ubiera v. Bell,* 463 F.Supp. 181, 184 (S.D.N.Y.1978); *Chen Chaun-Fa, supra,* 459 F.Supp. at 764–65.

an initial denial of political asylum while INS is still considering his application would frustrate the clear congressional policy of limiting judicial review to final administrative action").

The fact that plaintiffs claim that the District Director abused his discretion in denying their applications for asylum in that "the defendant ... issued 'decisions' that violated his own regulations and due process, and that were based on improper advisory opinions from the State Department," *see* Pl. Memo at 45, does not alter the fact that plaintiffs seek, in essence, to review the merits of the denial of asylum in each of the cases referred to in the complaint, which denials are not ripe for judicial review. *Compare Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1035–36 (5th Cir.1982).[12]

Moreover, there is no merit to plaintiffs' due process claims based on the District Director's use of the State Department advisory opinions. *See Zamora, supra,* 534 F.2d at 1059. Given the very narrow scope of judicial review with respect to Congress' delegation of its plenary powers with respect to the admission and exclusion of aliens, *see Bertrand v. Sava,* 684 F.2d 204,

211–12 (2d Cir.1982) (and cases cited therein), plaintiffs' claim, based upon alleged "boiler plated" denials of their asylum applications, may not even rise to the level of an abuse of discretion, much less a violation of due process. Indeed, even in the context of a habeas corpus challenge to denials of parole to detained aliens, the Second Circuit stated:

> [T]he findings that all of the notices sent to the petitioners informing them that their parole requests had been denied were form letters containing virtually identical language does not necessarily support the [district] court's conclusion that no discretion had been exercised. While this finding may prove that the decision made in each case was the same—that is, that the parole requests were all denied—it is not at all probative on the question of whether there had been an individualized consideration of the actual parole requests.

*Id.* at 213.

In any event, plaintiffs are clearly not entitled to injunctive relief because it is clear that plaintiffs have adequate legal remedies in the deportation proceedings which have been or will be commenced.

12. The Court notes that the cases cited by plaintiffs in support of their position are factually and legally inapposite. The instant case is in no way similar to a class action brought by Haitian detainees challenging the government's refusal to grant them parole because of discrimination on the basis of national origin, committed by low-level officials in violation of an official executive policy. *Compare Jean v. Nelson,* 727 F.2d 957, 962, 984 (11th Cir.1984), *aff'd,* 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). Moreover, this case does not involve a habeas corpus challenge to INS' decisions denying parole to unadmitted alien detainees. *Compare Bertrand v. Sava,* 684 F.2d 204, 210 (2d Cir. 1982). This case involves instead an attempt to obtain judicial review before final administrative action has been taken, and that attempt must fail. *Cf. Jain v. INS,* 612 F.2d 683, 689–90 (2d Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980). Indeed, one of the cases relied upon by plaintiffs supports defendants' position.

The *Haitian Refugee Center* case involved a constitutional challenge to INS' "accelerated program of processing Haitian asylum and deporta-

tion cases." *See Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1041 (5th Cir.1982). In that case, the Fifth Circuit specifically noted: [W]e wish to emphasize the factual uniqueness of this case. Our holding is not to be construed as permitting a constitutional challenge in the district court based on a procedural ruling in a deportation proceeding with which an alien is dissatisfied. We refuse to condone any such end-run around the administrative process. Casting as a constitutional violation an interlocutory procedural ruling by an immigration judge will not confer jurisdiction on the district court. Such a result would indeed defeat the congressional purpose behind the enactment of section 106(a)— the elimination of dilatory tactics by aliens challenging deportation orders in piecemeal fashion. Congress resolved this problem by consolidating jurisdiction over challenges to final orders of deportation in one court, the court of appeals. We do not intend by our holding today to emasculate that solution, and given the narrowness of our holding, we do not expect such a result.
*Id.* at 1033.

*See Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312–13, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982). For that reason and for the other reasons referred to above, the Court also finds that plaintiffs have demonstrated neither a likelihood of success on the merits nor that they would sustain irreparable harm absent the relief they request. *Cf. id.; Small v. Kiley,* 567 F.2d 163, 165 (2d Cir.1977) (preliminary injunction); *Hotel and Restaurant Employees, supra,* 594 F.Supp. at 514.

Similarly, the Court finds no reason to grant a declaratory judgment, *see, e.g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 155, 87 S.Ct. 1507, 1515, 1519, 18 L.Ed.2d 681 (1967); *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112–13, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962), because it is clear that "a more appropriate or effective remedy exists, other than the declaration sought." *See Mississippi Valley Barge Line Co. v. Bulk Carriers, Ltd.,* 249 F.Supp. 743, 746 (S.D.N.Y.1965). *Accord, Smith v. Metropolitan Property and Liability Insurance Co.,* 629 F.2d 757, 759 (2d Cir.1980); *compare Beacon Construction Co. v. Matco Electric Co.,* 521 F.2d 392, 398 (2d Cir.1975). Where unnecessary, piecemeal, circuitous, and duplicative litigation can be avoided, *see New York Guardian Mortgagee Corp. v. Cleland,* 473 F.Supp. 409, 418 (S.D.N.Y.1979), because the issues raised can be fully and properly adjudicated in pending proceedings, *see* Blackman Aff. at ¶¶ 3–15 *passim,* declaratory relief should be denied. *See Smith, supra,* 629 F.2d at 759–60; *Aeronaves de Mexico, S.A. v. Triangle Aviation Services,* 389 F.Supp. 1388, 1391 (S.D.N.Y.1974), *aff'd,* 515 F.2d 504 (2d Cir.1975).

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss and/or for summary judgment is granted. The complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

It is SO ORDERED.