KAHN, Judge.
Appellant, Denise Madourie, came to the United States from Jamaica on January 4, 1994, with a nonimmigrant visitor B-2 visa. Madourie’s brother and mother live in Florida and are lawful permanent U.S. residents. Madourie’s sister also lives in the United States and has a student visa. On February 14, 1994, Madourie gave birth to a daughter in West Palm Beach, Florida. The child’s father lives in Jamaica.
On February 28, 1994, Madourie filed applications for Aid to Families with Dependent Children (AFDC) and food stamp benefits for her child. On March 22, the Department of Health and Rehabilitative Services (HRS) denied the benefits on the grounds that Ma-dourie and her child did not meet the Florida residency requirements. On June 28, Ma-dourie traveled to Jamaica to have her B-2 visa extended because, although her visa is valid until 1997, she must get it stamped every six months.
Madourie appealed the HRS decision and a hearing took place on July 19, 1994, before HRS Client Appeals Hearing Officer Usha Hebbar. On August 22, 1994, the hearing officer issued a final order reversing HRS’s decision to deny food stamp benefits to Ma-dourie’s child, but upholding the denial of AFDC benefits. Madourie appeals the denial of AFDC benefits. Because HRS correctly applied the residency requirement under state and federal law, we affirm.
For Madourie’s child to qualify for AFDC benefits, the child must meet citizenship and residency requirements. Rule 10C-1.091, *238 Florida Administrative Code, concerns the citizenship requirement and provides:
The child, parent or relative whose needs are included in an AFDC grant must be either a citizen, or an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law. Applicants and recipients must sign a declaration attesting to their United States citizenship or lawful alien status and provide documentation of citizenship or alien status, when questionable. ...
The parties apparently agree that because Madourie’s needs will not be included in an AFDC grant to her child, only the child’s citizenship is considered for this requirement and, because the child was born in the United States, the child is a U.S. citizen.
Rule 10C-1.090, Florida Administrative Code, concerns the residency requirement and provides:
The child must be a resident of the State of Florida. Residence exists when the child and caretaker relative are permanent residents or are living in the State for employment purposes. Permanent residents are those who are residing in the State with intent to remain. Residents for employment purposes are those who are living in the State, are not AFDC recipients elsewhere and who have come to the State with a job commitment or are actively seeking employment. Permanent residence must be verified/documented when the eligibility specialist questions the caretaker relative’s statement....
(emphasis added). Madourie is her child’s “caretaker relative.” See Fla.Admin.Code R. 10C-1.083(1) (“The payee for the check is the caretaker relative with whom the child lives who assumes primary responsibility for the child’s daily supervision, care and control. Usually the caretaker relative is the parent who lives in the home with the child on a continuing basis.”). Because Madourie’s visa does not authorize her to work in the United States, she is not living in Florida for employment purposes. See 8 C.F.R. § 214.1(e) (“A nonimmigrant in the United States in a class defined in [8 U.S.C. § 1101(a)(15)(B) J as a temporary visitor for pleasure ... may not engage in any employment.”). Thus, for Madourie’s child to be a resident of Florida,, Madourie and her child must be permanent residents of the state, i.e., residing in Florida with the intent to remain.
Appellant asserts that, during her eligibility interview, the HRS worker did not question her regarding her intent to remain in the state and, because she was not so questioned, appellant infers that her statement alone is sufficient to verify her residency. According to the authority cited by appellant in support of her argument, “[i]f the residency is established by intent to remain in the state, verification is only necessary when the residency statement is questionable.” HRS Integrated Policy Manual § 1415.15.00. As indicated by the HRS decision, however, the eligibility specialist did question Madourie’s statement, as he denied AFDC because of the failure to satisfy the residency requirement, citing Rule 10C-1.090. Indeed, Ma-dourie testified at the hearing that she had taken her visa with her and the HRS worker had made a copy of it. Thus, although Ma-dourie believes she will have no difficulty renewing her visa, the nature of her presence in the United States, as a nonimmigrant temporary visitor, renders her statement of residency questionable. Specifically, according to the Immigration and Nationality Act (INA), a “nonimmigrant alien” such as Ma-dourie is “an alien ... having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure.” 8 U.S.C. § 1101(a)(15)(B); see 8 C.F.R. §§ 214.1(a)(l)(i), .1(a)(2) (dividing section 1101(a)(15)(B) nonimmigrants into B-l visitors for business and B-2 visitors for pleasure). Further, every alien “shall be presumed to be an immigrant until he establishes to the satisfaction of the consular office, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 1101(a)(5) of this title.” 8 U.S.C. § 1184(b). A provision of the Code of Federal Regulations addresses temporary visitors for business or pleasure and contains the requisite qualifications for status as a nonimmigrant visitor:
*239 An alien is classifiable as a nonimmigrant visitor for business (B-l) or pleasure (B-2) if the consular officer is satisfied that the alien qualifies under the provisions of INA 101(a)(15)(B), and that:
(1) The alien intends to leave the United States at the end of the temporary stay (consular officers are authorized, if departure of the alien as required by law does not seem full assured, to require the posting of a bond with the Attorney General in a sufficient sum to ensure that at the end of the temporary visit, or upon failure to maintain temporary visitor status, or any status subsequently acquired under INA 248, the alen will depart from the United States);
(2) The alen has permission to enter a foreign country at the end of the temporary stay; and
(3) Adequate financial arrangements have been made to enable the alen to carry out the purpose of the visit to and departure from the United States.
22 C.F.R. § 41.31(a). This regulation also provides that the term “pleasure” refers to “legitimate activities of a recreational character, including tourism, amusement, visits with friends or relatives, rest, medical treatment, and activities of a fraternal, social, or service nature.” Id. § 41.31(b)(2). Thus, to qualify for a nonimmigrant B-2 visa, Madourie had to satisfy the appropriate officials that she was entitled to that status because she intended to leave the United States at the end of her temporary stay. See Jain v. Immigration & Naturalization Serv., 612 F.2d 683, 686 (2d Cir.1979) (To establsh bona fide nonimmigrant status, “a nonimmigrant is required to demonstrate to the satisfaction of the immigration authorities that he has a foreign residence that he has no intention of abandoning and that he wil depart voluntarily at the end of his authorized stay.”), cert. denied, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); see also 8 C.F.R. § 214.1(f) (“A condition of a nonimmigrant’s admission and continued stay in the United States is the full and truthful disclosure of all information requested by the Service. Willful failure by a nonimmigrant to provide full and truthful information requested by the Service (regardless of whether or not the information requested was material) constitutes a failure to maintain nonimmigrant status under section 241(a)(l)(C)(i) of the Act.”).
Finally, the HRS Integrated Policy Manual provides the following guidelines for determining residency:
Residency exists when the intent of the individual is to remain in the state. Residency is not dependent upon the duration of the stay. Residency does not exist when the stay is for a temporary purpose such as a vacation and there is intent to return to a residence in another state.
HRS Integrated Policy Manual § 1415.05.10.05 (emphasis added). As Ma-dourie had to demonstrate that her stay was temporary to obtain her nonimmigrant B-2 visa, the hearing officer did not err in determining that she does not qualify as a Florida resident. Further, because Madourie is not a Florida resident, neither is her child. Therefore, HRS did not err in denying Ma-dourie’s application for AFDC benefits for her child and the order on appeal is AFFIRMED.
BARFIELD and DAVIS, JJ., concur.